[COMMENT1] 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

                                                 NO.
2-08-118-CV

 

 

LARRY YORK D/B/A                                                                          APPELLANT

YORK TANK TRUCKS

 

                                                             V.

 

STATE OF
TEXAS AND 

WISE COUNTY, TEXAS                                                                     APPELLEES

 

                                                       ------------

 

                  FROM THE COUNTY COURT AT LAW OF WISE COUNTY

 

                                                       ------------

 

                                      OPINION ON REHEARING

 

                                                       ------------

After considering the motions for rehearing filed
by appellant and both appellees, we deny all four motions,
but we withdraw our prior opinion and judgment of June 11, 2009 and substitute
the following to make nonsubstantive clarifications.

Appellant Larry York d/b/a York Tank Trucks
(York) appeals from the trial court=s order
dismissing York=s suit against appellees State of Texas and Wise
County, Texas for want of jurisdiction. 
In seven issues, York challenges the trial court=s
conclusions of law supporting its dismissal orders, as well as appellees= other
grounds for dismissal in their pleas to the jurisdiction.  We affirm in part and reverse and remand in
part.

                                                Background
Facts

On October 29, 2006, Trooper Tim Godwin, a Texas
Department of Public Safety (DPS) officer, seized and
impounded a tank trailer bearing the license plate number W41
503 because the vehicle identification number (VIN) had been removed.  Upon checking the license plate number, DPS determined that the registered owner of the trailer was
listed as McNutt Co. in Snyder, Texas. 
Instead of contacting McNutt Co., however, Sergeant David Martinez
contacted York.  York Vacuum was listed
on the registration receipt, which expired in October 2006, as the Arenewal
recipient,@ and the
vehicle location was shown as an address in Bridgeport.[1]  Also, AYork@ was
painted on the side of the trailer.  York
explained that he owned the trailer but that the title had not been
transferred.  He stated that the VIN
plates had been removed and presumably destroyed while the trailer was being
repaired.[2]  Sergeant Martinez asked a DPS
Motor Vehicle Theft Analyst to search for similar trailers in Texas.  The analyst located five, only one of which
was currently registered.  According to
Sergeant Martinez,

Without the VIN, I had no
way of determining whether the trailer matched an MD trailer currently
registered in Texas or whether the trailer was stolen and brought in from out
of state.  No further action was taken
because Mr. York indicated that all parts with the VIN attached had been
destroyed.

However, there were no reports of a stolen trailer similar to the one
seized.

Although York requested that the trailer be
returned to him, on February 16, 2007, the State, through Sergeant
Martinez, petitioned a Wise County magistrate to dispose of the property as
stolen under chapter 47 of the Texas Code of Criminal Procedure.  See Tex. Code Crim. Proc. Ann.
arts. 47.01B12 (Vernon 2006 and Supp. 2009);
Tex. Transp. Code Ann. ' 501.158 (Vernon 2007)
(providing that vehicle with removed, altered, or obliterated VIN may be
treated as stolen for purposes of custody and disposition).

On March 29, 2007, York and Trooper Martinez
appeared in Justice of the Peace Court No. 2 in Wise County.  According to York, he Apresented
a substantial amount of evidence showing [his] ownership in and right to
possession of the tank trailer,@
including his Atestimony,
several photographs of the trailer with the other vehicles@ he
owned, Athe
billing records for having the trailer converted to a tank trailer, repair
records on the trailer, records showing [he] insured the vehicle, inspection
records from [DPS], and Registration Renewal Receipts
from the State.@ 
Also according to York, no evidence was presented that the trailer was
actually lost or stolen.  Even so, the
justice court awarded the trailer to the State and ordered that it be
used or disposed of by the Wise County Sheriff=s
Department at its discretion.[3]  York failed to timely appeal although he
attempted to do so.[4]  See Tex. Code Crim.
Proc. Ann. art. 47.12(c) (requiring appellant to give oral notice of
appeal immediately after decision and to post bond); Phillips v. State,
77 S.W.3d 465, 466B67 (Tex.
App.CHouston
[1st Dist.] 2002, no pet.); White v. State, 930 S.W.2d
673, 676 (Tex. App.CWaco 1996, no writ).  The trailer has remained locked and fenced in
since that time, and the markings for York=s
business have been removed.

On August 22, 2007, York sued appellees.  He alleged that when DPS
seized the trailer, and when the justice court awarded it to appellees, the trailer was part of York=s
bankruptcy estate under a January 14, 2003 filing that had not yet been
discharged.  York sought a declaratory
judgment that the justice court=s order
was void because it was rendered in violation of the bankruptcy code=s automatic
stay.  See 11 U.S.C.A.
' 362(a)(3) (West 2004).  He
also raised a takings claim under article I, section 17 of the Texas
constitution, seeking damages.[5]  Tex. Const. art. I, ' 17.  In their answers, appellees
asserted sovereign immunity from suit and liability.  In addition, they both filed pleas to the
jurisdiction on the same grounds; they also alleged that York had not proven
that the trailer was part of the bankruptcy estate, that
only the bankruptcy court could determine whether it was included in the
estate, and that even if it was, the order was voidable, not void.  They further alleged that because the trailer
was stolen, the justice court=s action
fell within the exercise of police or regulatory power exception to the
automatic bankruptcy stay.  See 11
U.S.C.A. ' 362(b)(4).  York filed
traditional and no-evidence motions for summary judgment on both appellees=
immunity defenses and jurisdictional allegations.

The trial court initially granted the State=s plea
to the jurisdiction.  York then filed a
motion for reconsideration, in which he asked to present new evidence showing
that McNutt Co. had sold his father the trailer during the late 1980s or early 1990s and that
York had bought the trailer, along with the other assets of his father=s business,
in 1993.  He financed the sale through a
loan from Roscoe State Bank, which took a lien on the business=s
assets, including the trailer.  York
never obtained a certificate of title to the trailer in his name because his
father originally planned to scrap the trailer for parts; because his father
never did so, the trailer sat unused for several years.  York decided to put the trailer into service
in 1999; he obtained a new license plate, began having the trailer inspected by
DPS, and started registering it with the State.  The trial court granted York=s motion
for reconsideration.

York filed a second amended petition, in which he
alleged the new facts showing his ownership of the trailer and explaining why
the VIN plates were missing.  He also alleged
a new declaratory judgment claim:  that
the proceeding in the justice court violated his substantive and procedural due
process rights because chapter 47 does not require a prompt hearing once
property is seized as stolen; that chapter 47 does not provide for a fair and
meaningful hearingCas evidenced by the fact that
during a five-year period preceding York=s suit,
the justice court had awarded Wise County property seized for lack of a VIN in Avirtually
every case,@ except
one involving a Wise County Commissioner; and that the statutory deadlines for
perfecting an appeal are Awholly unreasonable and violate
the due process rights of [York] and others involved in such hearings.@

Appellees
responded by filing supplements to their pleas to the jurisdiction.  In those responses, the State contended that
only the bankruptcy court in which York=s case
was pending could determine whether the trailer was a part of the bankruptcy
estate, that York=s suit should be against the
justice court rather than appellees, that the seizure
of the trailer under section 501.158 of the transportation code was not a
taking under article I, section 17 of the Texas constitution, and that they are
immune from the newly pled due process claims. 
The State presented evidence that York attempted to file an undated
notice of appeal, which has the following handwritten notation, A4-9-07
No Bond required per Judge.  Respondent
is not in possession of property.@  The notation is signed AX Judge
Johnson.@  Also attached to the supplemental response is
a copy of a petition for bill of review that York filed in the Justice Court
Precinct No. 2 of Wise County, contending that he failed to meet the oral
notice of appeal requirement due to accident or official mistake because he
appeared without counsel and no record was made.  The justice court denied the bill of review,
concluding that York did not have a meritorious defense.

York subsequently filed affidavits from Tyson Schiflett, the owner of the painting business; Brian Studdard, a senior Vice President for Roscoe State Bank,
which claimed a lien on the trailer; and Lyndia
McNutt.  Schiflett
averred that his painters removed the VIN plates from the trailer and Afailed
to rivet@ them
back onto the trailer when they were finished. 
Although he searched for the VIN plates after York contacted him, he was
unable to locate them.  According to Schiflett, they had Aprobably
been lost or discarded.@

Studdard averred
that the trailer was accepted by the bank as collateral for a loan to York and
that the bank currently held a lien on the trailer.  The bank was never notified of the
proceedings in the justice of the peace court. 
Studdard also averred that York had delivered
a true and correct copy of title to the trailer in his name.  Attached to his affidavit was a copy of a
Texas certificate of title to the trailer listing (on the back in the AAssignment
of Title@ space)
the owner as McNutt Co., and signed by David McNutt and Larry Wayne York.  Also attached is a recorded UCC-1 financing statement showing the bank=s
secured interest in the trailer.

McNutt averred in her affidavit that her late
husband, Harold McNutt, sold the trailer to York=s father
and that David McNutt subsequently signed over title on behalf of McNutt
Co.  Attached to her affidavit is the
same certificate of title with the assignment from McNutt Co. to Larry Wayne
York.  She averred that David McNutt was
authorized to sign the assignment and that his signature on the certificate is
genuine.

After a hearing, the trial court sent the parties
a letter attaching the following ruling and asking for an order to be prepared:

After hearing further
argument of counsel, and reading the briefs submitted by the parties, the Court
is of the opinion that it lacks jurisdiction to hear this matter, both as to
the State of Texas, and the County of Wise. 
If the Court takes everything as true on behalf of [York], the Court is
left with the following:

 

No direct appeal was made from the evidentiary hearing before the
Justice of the Peace Court.  Therefore,
the matter became final and appealable as a matter of law.

 

The Declaratory Judgment[s] Act=s purpose is to allow a procedural device for
deciding cases already within the court=s jurisdiction, not create a substantive cause of
action.  Since this court does not have
jurisdiction over a case that became final and unappealable
at the Justice Court level, this Court has no ability to hear a Declaratory
Judgment case as a matter of law.  A
contrary opinion of the law would amount to creating a new cause of action in
collaterally attacking any level of court decisions that have become
procedurally final.

 

The Court is of the opinion that the Justice Court=s ruling is voidable, not
void, and the Bankruptcy Court is the only proper forum for deciding whether or
not the public policy exception is applicable to the bankruptcy stay regarding
the trailer.

 

Therefore, the Court
grants both Defendants= Pleas to the
Jurisdiction of the Court.  The Court
does not reach the issues of whether or not a taking occurred, or whether
or not sovereign immunity applies in this case. 
[Emphasis added.]

 








Thereafter, the trial court
signed two orders granting each appellee=s plea
to the jurisdiction; the trial court=s orders
each state that, granted in conjunction with the other order, they Adismiss[]
all claims and parties to this suit and . . . operate as a final
judgment in this action.@ 
[Emphasis added.]

Upon York=s
request, the trial court filed findings of fact and conclusions of law.  York appeals from the trial court=s final
orders dismissing the case for want of jurisdiction.

                           Standard
of ReviewCPlea to the Jurisdiction

We review the trial court=s ruling
on a plea to the jurisdiction under a de novo standard of review.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d
217, 225B26, 228
(Tex. 2004); Tex. Natural Res. Conservation Comm=n v. IT‑Davy, 74 S.W.3d
849, 855 (Tex. 2002); City of Carrollton v. Singer, 232 S.W.3d 790, 794 (Tex. App.CFort
Worth 2007, pet. denied).  Whether a pleader
has alleged facts that affirmatively demonstrate a trial court=s
subject matter jurisdiction, or whether undisputed evidence of jurisdictional
facts establishes a trial court=s
jurisdiction, is a question of law.  Miranda,
133 S.W.3d at 226; City of
Carrollton, 232 S.W.3d at 794.

When a plea to the jurisdiction challenges the
pleadings, we determine if the pleader has alleged facts that affirmatively
demonstrate the court=s jurisdiction to hear the
cause.  Miranda, 133 S.W.3d at 226; Tex. Ass=n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  We construe the pleadings liberally in favor
of the plaintiff and look to the pleader=s
intent.  Miranda, 133 S.W.3d at 226; Tex. Ass=n of Bus., 852 S.W.2d at 446.

But if a plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider relevant evidence submitted by
the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do.  Miranda, 133 S.W.3d at 227; Bland ISD v.
Blue, 34 S.W.3d 547, 555 (Tex. 2000); Tex. Dep=t of Pub.
Safety v. Andrews, 155 S.W.3d 351, 355 (Tex. App.CFort Worth 2004, pet.
denied).  If the evidence creates a fact
question regarding the jurisdictional issue, then the trial court cannot grant
the plea to the jurisdiction, and the fact issue will be resolved by the factfinder.  Miranda, 133 S.W.3d at 227B28;
Andrews, 155 S.W.3d at 355.  But if the relevant evidence is undisputed or
fails to raise a fact question on the jurisdictional issue, the trial court rules
on the plea to the jurisdiction as a matter of law.  Miranda, 133 S.W.3d at 228; Andrews, 155 S.W.3d at 355.  This
standard generally mirrors that of a traditional summary judgment.  Miranda, 133 S.W.3d
at 228; see Tex. R. Civ. P. 166a(c).

           Correctness
of Conclusions of Law Upon Which Ruling is Based

In his first five issues, York challenges the
trial court=s
conclusions of law.  We may review
conclusions of law to determine their correctness based upon the facts.  Citizens Nat=l Bank
v. City of Rhome, 201 S.W.3d 254, 256
(Tex. App.CFort
Worth 2006, no pet.); Dominey v. Unknown
Heirs & Legal Representatives of Lokomski,
172 S.W.3d 67, 71 (Tex. App.CFort
Worth 2005, no pet.).

The trial court concluded as follows:

1.       [The]
Chapter 47 evidentiary hearing has become final and unappealable.

 

2.       The
County Court at Law has no direct jurisdiction over the Chapter 47 evidentiary
hearing, because there was no appeal perfected by [York].

 

3.       The
Declaratory Judgment[s] Act does not confer jurisdiction upon the County Court
at Law in order to allow a collateral attack upon the final judgment of the
Precinct 2 Justice Court.

 

4.       The
proper forum for deciding whether or not an item of property is included in an
existing bankruptcy case is the Bankruptcy Court where said case is filed.

 

5.       The Precinct 2 Justice Court=s judgment is voidable
only (not void), subject to a ruling of the Bankruptcy Court that (1) the
property in question is part of the bankruptcy estate, and (2) that the police
power exception does not apply.

Finality of Justice Court=s
Judgment

York contends in his second issue that the trial
court=s first
conclusion is erroneous because the justice court=s
decision cannot be final and unappealable if it is
void, as York claims.[6]  But a void judgment may nevertheless still be
final in the sense that a direct appeal is no longer available once the
appellate filing deadlines have passed.  See
Newsom v. Ballinger ISD, 213 S.W.3d
375, 380 (Tex. App.CAustin
2006, no pet.); In re Vlasak, 141 S.W.3d 233, 237B38 (Tex.
App.CSan
Antonio 2004, orig. proceeding). 
Accordingly, we overrule York=s second
issue challenging the trial court=s first
conclusion of law.

Proper Court to Determine Applicability of Stay

York=s first
and fifth issues challenge the trial court=s fourth
and fifth conclusions of law:  that the
proper forum for deciding if the trailer is part of the bankruptcy estate is
the bankruptcy court in which the case was filed and that the justice court=s
decision is voidable only, subject to the bankruptcy court=s
determination that the property is part of the bankruptcy estate and that the
police power exception to the automatic stay is inapplicable.

The filing of a bankruptcy petition triggers the
automatic stay under the bankruptcy code. 
11 U.S.C.A. ' 362(a)(1); In re Sensitive Care, Inc., 28 S.W.3d 35, 38B39 (Tex.
App.CFort
Worth 2000, orig. proceeding).  The
automatic stay deprives state courts of jurisdiction over proceedings against
the debtor, and any action taken against the debtor while the stay is in place
is void and without legal effect. 
In re Sensitive Care, 28 S.W.3d at 39; see
Kalb v. Feuerstein, 308 U.S. 433, 439, 60 S. Ct. 343, 346 (1940); Howell
v. Thompson, 839 S.W.2d 92, 92 (Tex. 1992).  This is true regardless of whether a party or
the state court learns of the stay before taking action against the
debtor.  In re
Sensitive Care, 28 S.W.3d at 39.

Bankruptcy courts do not have exclusive
jurisdiction to determine whether and to what property the automatic stay applies;
a state court in which an action is pending may determine whether a stay
divests it of jurisdiction.  In re
McDaniel, 149 S.W.3d 860, 861 (Tex. App.CWaco 2004, order); Bamburg v. Townsend, 35 S.W.3d
85, 88 (Tex. App.CTexarkana 2000, no pet.); see,
e.g., Lockyer v. Mirant Corp., 398 F.3d 1098, 1106 (9th Cir. 2005); Chao v. Hosp. Staffing Servs., 270 F.3d 374, 382B85 (6th
Cir. 2001); cf. Houston Mun. Employees Pension Sys. v. Ferrell, 248 S.W.3d 151, 158 (Tex. 2007) (ACourts always
have jurisdiction to determine their own jurisdiction.@).  If the state court decides that the stay does
not apply, however, it runs the risk of the bankruptcy court later disagreeing;
if the bankruptcy court later determines that the stay did apply, the state or
district court=s
judgment is void ab initio.  Lockyer, 398 F.3d at 1106; Chao, 270 F.3d at 382B85.  But if the bankruptcy court decides that the
state or district court correctly determined that the stay did not apply, the
state court proceedings are not void.  Lockyer,
398 F.3d at 1106; Chao, 270 F.3d at 382B85.  In other words, the state court=s
holding is not entitled to preclusive effect in the bankruptcy court if later
challenged in that forum.  Lockyer, 398 F.3d
at 1106.

Appellees did not
urge forum non conveniens grounds here, i.e., that
the bankruptcy court was a more appropriate forum to determine applicability of
the stay.  Instead, they argued that the
county court at law was completely devoid of jurisdiction to determine the stay=s
applicability.  Thus, the trial court=s fourth
conclusion is erroneous.  Likewise, a
trial court=s
judgment taken in violation of the automatic stayCas
alleged hereCis void,
not voidable; just because a state court=s
determination of the applicability of a stay is subject to later validation or
invalidation by the bankruptcy court does not turn a void action into a
voidable one.  See In re De la Garza,
159 S.W.3d 119, 120B21 (Tex.
App.CCorpus
Christi 2004, orig. proceeding); Paine v. Sealy, 956 S.W.2d
803, 805B07 (Tex.
App.CHouston
[14th Dist.] 1997, no pet.); Chunn v. Chunn, 929 S.W.2d 490, 493
(Tex. App.CHouston
[1st Dist.] 1996, order).  That the
allegation of voidness is on collateral rather than
direct attack is of no import to this aspect of the trial court=s
judgment.  Accordingly, we conclude and
hold that the trial court=s fourth and fifth conclusions
of law are erroneous.  We sustain York=s first
and fifth issues.

Jurisdiction
Under Uniform Declaratory Judgments Act

York contends in his third and fourth
issues that the trial court=s third
conclusionCthat the
trial court has no jurisdiction under the Uniform Declaratory Judgments Act (DJA) to hear a collateral attack upon the justice court=s
decisionCis
erroneous.

The DJA provides that
it is to Abe liberally
construed and administered@ to
fulfill its purpose Ato settle and to afford relief
from uncertainty and insecurity with respect to rights, status, and other legal
relations.@  Tex. Civ. Prac. & Rem. Code Ann. '
37.002(b) (Vernon 2008).  A court
of record may, Awithin its jurisdiction[,]
. . . declare rights, status, and other legal relations whether or not further
relief is or could be claimed.@  Id. '
37.003(a).  The subject matter of a
declaratory judgment action includes a Adeclaration
of rights, status, or other legal relations@ of any
question of construction or validity arising under a statute when the person=s Arights,
status, or other legal relations are affected by [the] statute.@  Id. '
37.004(a).

Whether a court has subject matter jurisdiction
in a declaratory judgment action depends upon whether the underlying
controversy is within the constitutional and statutory jurisdiction of that
court.  Monk v. Pomberg,
263 S.W.3d 199, 204 (Tex. App.CHouston
[1st Dist.] 2007, no pet.) (op. on reh=g); Nelson
v. Regions Mortgage, Inc., 170 S.W.3d 858, 863
(Tex. App.CDallas
2005, no pet.).  It is well settled that
the DJA is not a grant of jurisdiction; rather, it is
a procedural device for deciding cases already within a court=s
jurisdiction.  Chenault
v. Phillips, 914 S.W.2d 140, 141 (Tex. 1996); City
of Houston v. Buttitta, 274 S.W.3d
850, 853 (Tex. App.CHouston
[1st Dist.] 2008, no pet.) (op. on reh=g).

Here, York claims that the justice court=s order
awarding the property to the State for the benefit of the Wise County Sheriff=s Office
is void because it was in violation of the bankruptcy stay and, therefore, the
justice court was without jurisdiction to enter it.  JudgmentsCeven
final onesCthat are
void for jurisdictional defects are subject to collateral attack.  Middleton v. Murff,
689 S.W.2d 212, 213 (Tex. 1985); Nguyen v. Intertex, Inc., 93 S.W.3d
288, 294B95 (Tex.
App.CHouston
[14th Dist.] 2002, no pet.); Zarate v. Sun
Operating, Ltd., 40 S.W.3d 617, 620B21 (Tex.
App.CSan Antonio
2001, pet. denied).  But the ability to
collaterally attack a judgment is limited by the long-standing and well-settled
rule that we must presume the validity of the judgment under attack and, thus,
extrinsic evidence may not be used to establish a lack of jurisdiction.  See In re A.G.G., 267 S.W.3d
165, 169 (Tex. App.CSan Antonio 2008, pet. denied)
(holding that extrinsic evidence of applicability of automatic stay could not
be considered because divorce decree, on its face, recited that trial court had
jurisdiction of matter and no evidence in record of divorce proceeding
affirmatively showed that automatic stay deprived trial court of jurisdiction);
Toles v. Toles,
113 S.W.3d 899, 914 (Tex. App.CDallas
2003, no pet.); Davis v. Boone, 786 S.W.2d 85,
87 n.3 (Tex. App.CSan
Antonio 1990, no writ).[7]  But see S. County Mut. Ins. Co. v. Powell, 736 S.W.2d
745, 749B50 (Tex.
App.CHouston
[14th Dist.] 1987, no writ) (holding, in dictum, that extrinsic evidence should
be permissible to show applicability of automatic stay in collateral attack
against judgment).  To prevail on a
collateral attack, the challenger must show that the judgment is void on its
face.  In re A.G.G., 267 S.W.3d
at 169; Sotelo v. Scherr,
242 S.W.3d 823, 830 (Tex. App.CEl Paso
2007, no pet.).

Here, nothing in the parts of the justice court
record presented as evidence shows that the justice court did not have
jurisdiction, that York had filed for bankruptcy, or that the automatic stay
affected the proceeding.  To determine
these matters, extrinsic evidenceCsuch as
that introduced in the county court at law proceedingsCmust be
considered.  Accordingly, the trial court
did not have jurisdiction to consider a collateral attack on the justice court=s
judgment because it is presumed regular and there is no nonextrinsic
evidence showing that it is void due to the applicability of the automatic
stay.[8]  See In re A.G.G., 267 S.W.3d at 169. 
We conclude and hold that the trial court could not hear the dispute
independently of the DJA;[9]
thus, it could not hear the dispute within the procedural framework of the DJA.  See Chenault, 914 S.W.2d
at 141; Buttitta, 274 S.W.3d at 853.

In addition, York may not collaterally attack the
justice court=s
judgment based on the alleged unconstitutionality of article 47.01a.  A challenge
to the constitutionality of a criminal statute must be brought in the trial
court or it is forfeited.  Karenev v. State, 281 S.W.3d
428, 434 (Tex. Crim. App. 2009); see White, 930 S.W.2d
at 675 (holding that action under 47.01a is a criminal
case because trial court functions in its capacity as a criminal
magistrate).  That a criminal proceeding
is based upon an unconstitutional statute does not render that proceeding void
if the trial court otherwise has jurisdiction. 
See Karenev, 281 S.W.3d at 432. 
The only part of York=s
constitutional complaint that appears to implicate the justice court=s
subject matter jurisdiction is his assertion that the value of the property
disposed of could exceed the court=s
monetary jurisdiction in civil cases. 
But that complaint is not implicated here because the justice court was
acting in its capacity as a criminal magistrate.  See Tex. Code Crim.
Proc. Ann. art. 47.01a; White, 930 S.W.2d at 675.

And even if the statute is more properly
characterized as civil in nature, if a civil court renders judgment on a claim
that is within its subject matter jurisdiction, but a relevant statute is
determined to be unconstitutional on its face, the judgment is merely rendered
erroneous or voidable, not void.  In
re R.B.,
225 S.W.3d 798, 802 (Tex. App.CFort
Worth 2007, no pet.); see Mass. v. Davis, 140 Tex. 398, 168 S.W.2d 216, 220 (1942), cert. denied, 320 U.S. 210
(1943); Kaye v. Harris County Mun. Util. Dist.,
866 S.W.2d 791, 795B96 (Tex.
App.CHouston [14th
Dist.] 1993, no writ); Dallas Mkt. Ctr. Dev. Co. v. Beran
& Shelmire, 824 S.W.2d
218, 222B23 (Tex.
App.CDallas
1992, writ denied).  Thus, we conclude
and hold that the trial court did not have jurisdiction to hear a collateral
attack on the constitutionality of article 47.01a in
an action under the DJA.  Because the trial court did not have
jurisdiction to consider York=s
declaratory judgment complaints under the DJA, we
conclude and hold that the trial court=s third
conclusion of law is not erroneous.  We
overrule York=s third
and fourth issues.

We are left, then, with York=s
takings claim, which is an entirely new cause of action pled in the alternative
and which presumes the finality of the justice court=s
judgment and seeks damages because of that judgment=s
effect.  Unlike York=s
declaratory judgment claim, his takings claim is not a collateral attack and
therefore not subject to the extrinsic evidence rule discussed above.

None of the trial court=s
findings and conclusions support its dismissal of York=s
takings claim, and the trial court specifically declined to rule on that
claim.  Thus, we must determine whether appellees= other
asserted reasons for defeating jurisdiction apply.

                  Sovereign and Governmental
Immunity - Takings Claim

Appellees contended
in the trial court that they are entitled to sovereign and governmental
immunity[10]
from suit; the trial court did not rule on these jurisdictional challenges.[11]  But because immunity implicates subject
matter jurisdiction, it may be reviewed on appeal regardless of whether the
trial court expressly ruled on that issue. 
See Miranda, 133 S.W.3d at 225B26; City
of Carrollton, 232 S.W.3d at 794.  Therefore, we address appellees=
contentions that they are immune from suit as to York=s pled
takings claim.

Appellees
contended in the trial court that their immunity had not been waived under the
Texas Tort Claims Act.  But York nonsuited his only tort claim, and he contends that appellees=
immunity as to his takings claim is waived by the takings clause of the Texas
constitution rather than the Tort Claims Act. 
Accordingly, we will consider whether article I, section 17 waives appellees=
immunity to York=s claim.

Appellees also
contend that York=s pleadings belie the existence
of a valid takings claim because he claimed that they are illegally holding his
trailer; thus, their actions could not constitute a valid, intentional taking
of property for public use.  In other
words, appellees claim that a takings claim lies only
for property legally obtained by a governmental entity.

The Texas constitution provides that A[n]o
person=s
property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such person.@  Tex. Const. art. I, ' 17.  By its plain terms, this takings provision
does not limit the government=s power
to take private property for public use but instead requires that a taking be
compensated; physical possession is, categorically, a taking for which
compensation is constitutionally mandated. 
Sheffield Dev. Co. v. City of Glenn Heights,
140 S.W.3d 660, 669B70 (Tex.
2004).

Article I, section 17 waives governmental
immunity for actions seeking compensation under that provision.  Gen. Servs. Comm=n v. Little‑Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001); Tex. Bay Cherry Hill, L.P.
v. City of Fort Worth, 257 S.W.3d 379, 395 (Tex.
App.CFort
Worth 2008, no pet.).  To establish a
takings claim, a claimant must prove that (1) a governmental entity
intentionally performed certain acts, (2) that resulted in a Ataking@
of property, (3) for public use.  Little‑Tex Insulation Co., 39 S.W.3d at 598; Tex. Bay
Cherry Hill, 257 S.W.3d at 395.

When a plaintiff fails to allege facts that would
support a valid takings claim, governmental immunity applies, and the trial
court should grant a plea to the jurisdiction. 
Little-Tex Insulation Co., 39 S.W.3d at 600; Tex. Bay Cherry Hill, 257 S.W.3d at 395. 
Whether alleged facts constitute a takings claim is a question of
law.  Little-Tex Insulation Co., 39 S.W.3d at 598; Tex. Bay
Cherry Hill, 257 S.W.3d at 395.  Thus, we must determine whether appellees=
challenges to York=s pled takings claim are
sufficient to defeat jurisdiction.

Appellees have
alleged that A[t]he
exercise of police powers in seizing and impounding the trailer by DPS officials is authorized under state law [as] a valid,
proper, and reasonable exercise of police powers@;
therefore, A[t]here
can be no compensable taking for the >seizure
and impounding= of the
trailer by DPS officials.@[12]  But even the valid exercise of police power
does not bar a takings claim under article I, section 17 if the taking was for
a Apublic
use.@  See Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980); City of Dallas v. VSC, LLC, 242 S.W.3d 584, 591B92 (Tex.
App.CDallas
2008, pet. filed); Sefzik v. City of
McKinney, 198 S.W.3d 884, 898 (Tex. App.CDallas
2006, no pet.) (quoting DuPuy
v. City of Waco, 396 S.W.2d 103, 107 n.3 (Tex. 1965)).

Appellees further
alleged that because York also pled that the justice court acted outside its
jurisdiction in awarding the property to appellees
that he did not allege a lawful taking. 
However, as York made clear in his response, he was not alleging that
the justice of the peace acted Aunlawfully,@ as in
completely outside her authority as a judge; he simply contends that in
exercising her valid judicial authority, she ruled in a case in which the court
did not have subject matter jurisdiction of the action brought by appellees and that, as a result, appellees
continue to intentionally possess his trailer for public use.  Accordingly, York=s
allegations that the justice court lacked subject matter jurisdiction because
of the bankruptcy stay do not defeat his takings claim.  See Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 404 (Tex. 1997); Cobb v. Harrington, 144
Tex. 360, 190 S.W.2d 709, 712 (1945).

Appellees further
allege that a valid takings claim requires that the governmental entity act
pursuant to its eminent domain powers and that the DPS
officials and the justice of the peace were acting Aunder
color of right@ granted
by article 47.01a rather than exercising their
eminent domain powers.  But this is not a
valid challenge to a takings claim.  See
Steele, 603 S.W.2d at 789; VSC,
242 S.W.3d at 592B93; Tex.
Workforce Comm=n v. MidFirst
Bank, 40 S.W.3d 690, 697 (Tex. App.CAustin 2001, pet. denied).  Indeed, it would negate the validity of
inverse condemnation claims based on regulatory actions (rather than actual
physical takings), which have long been permissible in Texas.  See, e.g., Mayhew v. Town of Sunnyvale,
964 S.W.2d 922, 933 (Tex. 1998) (holding that zoning
ordinance can effect a regulatory taking if the ordinance Adoes not
substantially advance legitimate state interests@ or
denies an owner all Aeconomically viable use of his
land@), cert.
denied, 526 U.S. 1144 (1999).  We
conclude and hold that the dismissal cannot be upheld based on appellees=
challenges to the validity of York=s
alleged takings claim.

The crux of York=s complaint,
then, seems to hinge on this issue: 
whether appellees, with knowledge that York
actually owned the trailer, intentionally utilized article 47.01a
to divest him of ownership.  In arguing
this issue, appellees contend that York cannot bring
a takings claim as to the trailer because it is deemed stolen by virtue of the
missing VIN plates; therefore, he has no legally cognizable property interest
in the trailer.  York, however, alleged
in his Second Amended Petition that the justice court had awarded Wise County
property seized for lack of a VIN in Avirtually
every case@ over a
five-year period, except one involving a Wise County Commissioner.  A fair reading of his complaint is that the
county, at least, has been using the statute as a means to take physical
possession of property owned by private citizens without compensation.

Indeed, appellees=
interpretation of the statute appears to lend at least some support to this
theory.  Appellees
repeatedly refer to article 47.01a as a forfeiture
statute.  A civil forfeiture action is an
in rem proceeding against contraband.  State v. Silver
Chevrolet Pickup, 140 S.W.3d 691, 692 (Tex.
2004).  Civil forfeiture statutes
are typically remedial rather than punitive and serve to deter criminal
behavior by imposing an economic penalty upon property itself, rather than an
individual.  See Fant
v. State, 931 S.W.2d 299, 304B08 (Tex.
Crim. App. 1996); Prear v. State, 933 S.W.2d 643, 646 (Tex. App.CSan
Antonio 1996, no pet.).  Under Chapter 59
of the code of criminal procedure, even an owner can lose his or her interest
in property that was used or intended to be used in the commission of certain
felonies.  See Tex. Code Crim.
Proc. Ann. ' 59.02(c)(1)
(Vernon 2006) (providing that owner=s property
may not be forfeited only if owner Adid not
know or should not reasonably have known of the act or omission giving rise to
the forfeiture or that it was likely to occur@).

The purpose of article 47.01a,
in contrast, is to return property to its rightful owner, not to enable the
State to obtain property as a means to deter criminal activity through the
imposition of an economic penalty.  See
Act of May 27, 1977, 65th Leg., R.S., ch. 813, 1977 Tex Gen. Laws 2034, 2034 (describing act
creating article 47.01a as Arelating
to the return of stolen property to the rightful owner when no criminal trial
is pending@); Universal
Underwriters Group v. State, 283 S.W.3d 897, 899B901
(Tex. App.CHouston
[14th Dist.] 2009, no pet.) (holding State not entitled to retain stolen
property under article 47.01a simply because rightful
owner=s gross
negligence made it possible for thief to steal it); White, 930 S.W.2d at 676 n.2 (considering
legislative history of appeal provision of chapter 47 showing that its purpose
is to Afacilitate
the rapid return of the property to its owner@).  Under article 47.01a,
the operative issue is who has the superior right to possess the property, not
whether the owner has somehow facilitated the theft.[13]  See Universal Underwriters, 283 S.W.3d at 900.  Thus, it is clear that the purpose of
transportation code section 501.158=s[14]
allowing vehicles without VINs to be disposed of in
the same manner as stolen property via article 47.01a
is not, as appellees contend, to Aremove
such property from the public domain to prevent stolen property from being used
and circulated@ but,
instead, to ensure that such vehicles are returned to their rightful owners if
those owners can be ascertained.  See Tex. Code Crim. Proc. Ann. art. 47.01a(a)(1)B(3)
(providing that upon application of interested party, court shall order
property delivered to Awhoever has the superior right
to possession,@ either
without conditions or subject to the condition that the property be made
available to the State if needed in future prosecutions, or to a peace officer
pending resolution of criminal investigations), art. 47.01a(b)
(providing that if probable cause exists to believe that property is stolen, and
Athe
identity of the actual owner of the property cannot be determined,@ the
court shall order it delivered to a governmental agency for official purposes,
delivered to a person authorized to receive and dispose of property under
article 18.17, or destroyed), art. 47.03 (requiring officer seizing
property to Aimmediately
file a schedule of same, and its value, with the court having jurisdiction of
the case@ and Anotify
the court of the names and addresses of each party known to the officer who has
a claim to possession of the seized property@),
art. 47.04 (providing that if ownership is proven to the
court upon an examining trial, property shall be restored to the owner, subject
to the property being made available during trial), art. 47.06B07
(providing that property can be sold if not claimed within thirty days of
conviction but also allowing owner to recover property after sale as set forth
in article 18.17 of the code of criminal procedure).

Here, York has put forth considerable, credible
evidence of his ownership of the vehicle, regardless of the missing VIN.[15]  Appellees have not controverted that evidence. 
Although from York=s affidavit testimony it appears
that the evidence he presented to the justice court showed that McNutt Co.,
rather than York, was the true owner of the property,[16]
Sergeant Martinez=s testimony does not indicate
that he ever contacted or attempted to contact McNutt Co.; he simply concluded
that since York could not produce the original VIN plates that the property was
Adeemed@ stolen
and that there was no way of ever tracing ownership.[17]  McNutt Co. was never served in the 47.01a proceeding or named as an interested party.  This is significant because if McNutt Co.
were the owner, as evidenced on the DPS registration
receipts, and was allowing York to use the property, also as evidenced by the DPS registration receipts, then York would have a superior
right to possess the trailer as against appellees,
regardless of whether the trailer was deemed stolen or not.  See Universal
Underwriters, 283 S.W.3d at 901 (holding that a
title holder has A>the
superior right to possession= over one
who holds no title@).  It seems logical that if DPS
were acting in furtherance of the true purpose of article 47.01a,
to return property to its rightful owner, that Sergeant Martinez would at least
have included McNutt Co. in his investigation. 
The evidence that he contacted York instead, coupled with York=s
allegations (and appellees=
admissions that appellees are treating article 47.01a as a forfeiture statute), is enough to at least
raise a fact issue sufficient to survive appellees=
jurisdictional challenge to York=s
alleged takings claim.  See Miranda,
133 S.W.3d at 227B28; Andrews,
155 S.W.3d at 355.

Likewise, we conclude and hold that York raised a
fact issue as to whether the trailer was to be used for a public purpose
because, although it is currently being stored in a locked area, the justice
court=s order
states that the sheriff=s department had the discretion
to either use the trailer or dispose of it in its discretion.[18]

                                  Immunity
of Governmental Officials

Wise County also alleged that it is entitled to
derivative immunity through the qualified or official immunity of Trooper
Godwin and Sergeant Martinez, and the qualified, official, or judicial immunity
of Justice of the Peace Johnson.

Official immunity is an affirmative defense to
personal monetary liability available to an official sued in his or her individual
capacity.  Tex. A&M Univ.
Sys. v. Koseoglu, 233 S.W.3d
835, 843 (Tex. 2007); City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  It is not a proper basis for a plea to the
jurisdiction by a governmental entity.  See
Koseoglu, 233 S.W.3d at 843; City of Lancaster, 883 S.W.2d at 653. 
Qualified immunity, likewise, is an analogous affirmative defense to
federal section 1983 claims against public officials, a claim York has not made
here.  42 U.S.C.A.
' 1983
(West 2004); Leo v. Trevino, 285 S.W.3d 470,
479 (Tex. App.CCorpus
Christi 2006, no pet.); see Leachman v. Dretke, 261 S.W.3d 297, 312
(Tex. App.CFort
Worth 2008, no pet.).  Accordingly, we
conclude and hold that the dismissal orders cannot be upheld as to York=s
takings claim based on Wise County=s
allegations that it is entitled to the benefit of any official or qualified
immunity of Trooper Godwin and Sergeant Martinez.

Additionally, derived judicial immunity protects
officers of the court or one to whom a judge has delegated or appointed a
person to perform services on behalf of the court.  Dallas County v. Halsey, 87 S.W.3d 552, 553 (Tex. 2002); Alpert v. Gerstner, 232
S.W.3d 117, 125B26 (Tex.
App.CHouston
[1st Dist.] 2006, pet. denied).  This
type of immunity flows from the official judicial capacity of the judge.  See Dallas County, 87
S.W.3d at 554. 
Thus, it logically does not extend to a party to a proceeding, nor to
the State or a county simply by virtue of a judge=s
employment.  Accordingly, we conclude and
hold that dismissal of York=s
takings claim would not have been proper on a derivative immunity theory.

Having determined that none of appellees=
immunity allegations defeats the county court at law=s
jurisdiction over York=s takings claim as pled, we
sustain York=s sixth
and seventh issues as to that claim only.

                                                     Conclusion

Having overruled York=s issues
dispositive to his declaratory judgment claims, we affirm the trial court=s
dismissal orders as to those claims.  But
having sustained York=s sixth and seventh issues as to
his takings claim, we reverse the trial court=s
dismissal orders as to that claim only and remand this case for further
proceedings consistent with this opinion.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  CAYCE, C.J.;
LIVINGSTON and WALKER, JJ.

 

CAYCE, C.J. filed a dissenting opinion.

 

 

DELIVERED:  September 24, 2009

 

 




 









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

                                                 NO.
2-08-118-CV

 

 

LARRY
YORK D/B/A                                                                          APPELLANT

YORK TANK TRUCKS

                                                             V.

 

STATE
OF TEXAS AND                                                                     APPELLEES

WISE COUNTY, TEXAS

                                                       ------------

 

                  FROM THE COUNTY
COURT AT LAW OF WISE COUNTY

 

                                                       ------------

 

                         DISSENTING OPINION ON REHEARING

 

                                                       ------------

I respectfully dissent.  The majority correctly held that the Justice
of the Peace=s
judgment, which determined the issue of York=s
alleged ownership, was not void on its face and, therefore, that it was not
subject to collateral attack.  The
majority, however, disregards the finality of the Justice of the Peace=s
determination on the issue of ownership and erroneously holds that York=s
takings claim may proceed.  In so
holding, the majority has allowed York to do what it held he cannot do_collaterally attack the
Justice of the Peace=s judgment.

An essential element of a takings case is that
the plaintiff owned the property.[1]  The basis of York=s takings
claim is that the State of Texas and Wise County wrongfully took his
trailer.  But, the Justice of the Peace
has determined that the trailer was not York=s
property.  York did not directly appeal
this decision.  Thus, the Justice of the
Peace=s
factual determination that York did not own the property became final with
respect to any further challenge raised in state court.  York=s only
available option was to challenge the Justice of the Peace=s
finding in bankruptcy court, which he failed to do.  He cannot collaterally challenge the Justice
of the Peace=s
finding in state court.

Because York=s
takings claim constitutes an impermissible collateral attack on a final
judgment, I dissent.  I would affirm the
judgment of the trial court dismissing York=s suit
for want of jurisdiction.

 

JOHN
CAYCE

CHIEF
JUSTICE

 

DELIVERED:  September 24, 2009











[1]York=s business is located in
nearby Paradise.





[2]According to York, the
trailer was sandblasted and then repainted several months before the stop.  During that process, the painters removed the
VIN plates and forgot to reattach them. 
York did not know the VIN plates were missing and no one could find them
after the seizure.  The fifth wheel
plate, which also had the VIN stamped on it, had been removed and discarded.





[3]The justice court=s order states that A[j]udgment
is ruled to the Court upon good and sufficient evidence that Plaintiff [the
State] is entitled to recover judgment.@





[4]York later filed a bill
of review in the justice court, which was denied.  He did not appeal the denial.





[5]York initially pled a
claim for conversion, but he dropped it in his first amended petition.





[6]None of the trial court=s findings and
conclusions provides support for its dismissal of York=s takings claim.  Accordingly, we will review the propriety of
the dismissal of that claim in our analysis of appellees= other challenges to the
trial court=s jurisdiction.





[7]See
also, e.g., Treadway v. Eastburn, 57 Tex. 209, 1882 WL
9490 (1881); Switzer v. Smith, 300 S.W. 31, 33 (Tex. Comm=n App. 1927, judgm=t adopted).





[8]On rehearing, York
contends that the application of this rule frustrates the purpose of the
automatic stay.  But the rule is based
upon a competing and equally valid principle, that of the
need for Aabsolute verity@
of judgments that appear regular and are no longer subject to direct
attack.  See Treadway,
1882 WL 9490, at *4B5.  York could have raised the pending bankruptcy
proceeding in the justice court, thereby making the judgment subject to
collateral attack, but he failed to do so. 
In addition, extrinsic evidence is available to challenge a void
judgment in a direct attack, such as in a bill of review.





[9]See Bland ISD v. Blue, 34 S.W.3d 547, 553B55 (Tex. 2000) (holding
that sometimes court must look at facts involving merits of claim to determine
its jurisdiction to hear claim).





[10]Sovereign immunity refers
to the State=s immunity while
governmental immunity refers to the immunity of political subdivisions of the
State, including counties, cities, and school districts.  Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 694 n.3
(Tex. 2003); Sanders v. City of Grapevine, 218 S.W.3d
772, 776 n.1 (Tex. App.CFort Worth 2007, pets.
denied).  For ease of reference, we will
refer to both as sovereign immunity.





[11]Appellees also contended that they
are immune from liability, which, as an affirmative defense, is not a
jurisdictional matter.  See Miranda,
133 S.W.3d at 224; Tex. Dep=t of Transp. v. Jones, 8 S.W.3d
636, 638 (Tex. 1999); City of Carrollton, 232 S.W.3d
at 795.





[12]York clarified in his
reply brief that he does not contend that the initial seizure of the trailer
constituted a compensable taking, but rather that appellees= continued possession and
assertion of rights to the trailer constitute such a taking.  Although the State contends on rehearing that
it has never possessed the trailer, and therefore cannot be responsible under a
takings theory for its continued possession, the State filed the justice court
action in its name, and the justice court awarded the trailer to the State,
for the County=s use or disposal.





[13]The State claims that
when property is seized for lack of a VIN, ADPS officials cannot allow a
citizen to possess the property with its [VIN] removed, as the actual owner of
the property cannot be conclusively determined.@  [Emphasis added.]  But article 47.01a
does not require that ownership be conclusively proved to return property, only
that the interested party show a Asuperior right to possession.@  Tex. Code Crim. Proc. Ann.
art. 47.01a (a)(1).





[14]See Tex. Transp. Code ' 501.158 (using the
permissive term, Amay,@ to provide that property
seized for lack of a VIN is subject to disposition under article 47.01a).  No other
provision in the statutory scheme regarding vehicles with missing, altered, or
obliterated VINs indicates that such vehicles are
considered Aper se@ stolen.  For example, it is an affirmative defense to
prosecution for possessing or operating such a vehicle that the person
operating or possessing the vehicle is the owner.  Tex. Penal Code Ann. ' 31.11(b)(1) (Vernon 2003). 
And a person Adetermined by the
department or a court to be the owner of a motor vehicle . . . that has had the
serial number removed, altered, or obliterated may apply to [DPS] for an assigned vehicle identification number.@  Tex. Transp. Code Ann. ' 501.033(a) (Vernon
2007) (emphasis added).  A certificate of
title or Aother valid evidence of
ownership as
required by the department@ is required to apply for
such a number.  Id. ' 501.033(b)
(emphasis added).  This is in direct
contrast to the State=s argument that if a
vehicle seized for lack of a VIN were returned to the public domain, the
seizure and impounding of the vehicle under section 501.158 would be repeated.





[15]In its motion for
rehearing, Wise County contends, and the dissent agrees, that York cannot now
claim he owns the trailer for purposes of a takings claim because the justice
court=s determination that he
did not own the trailer is final and entitled to preclusive effect.  But the justice court did not find that York
is not the owner of the trailer; Aownership@ was not at issue in the proceeding.  As we have previously stated, article 47.01a does not require a party to prove ownership, but
rather a superior right of possession. 
If McNutt were the rightful owner of the trailer and now bringing a
claim as a result of the awarding of the trailer to the State in the justice
court proceeding, would we hold that the issue of Aownership@ had already been
litigated and, therefore, that McNutt could not now attempt to show
ownership?  Surely a statute compelling
such a result would effect a compensatory Ataking.@





[16]York averred that he
produced registration receipts, photographs of the trailer with his other
equipment, billing records, repair records, DPS
inspection records, and his own testimony. 
However, the registration receipts in this record show the owner as
McNutt Co. and York only as the Aregistration recipient.@  There is no indication that York presented
the justice court with the ownership evidence that he brought forward
here.  Interestingly, though, he alleges
in his Second Amended Petition that in the case of the Wise County Commissioner
who recovered his property, the justice court initially ruled that the property
be awarded to the county, but in a subsequent proceeding over a year later,
and after the time for appeal had expired, the justice court ruled that the
Commissioner could recover the property. 
Although mere allegations at this point, it is interesting to note
whether the governmental entities in that case accused the plaintiff of
overwhelming the court with voluminous filings while at the same time raising
numerous avoidance defenses.





[17]See Am. Fire & Indem. Co. v. Jones, 828 S.W.2d 767, 768
(Tex. App.CTexarkana 1992, writ denied) (referencing officer=s testimony regarding
confidential VIN plate that, when cross-referenced through the automobile
manufacturer, identified the truck as one reported stolen by the owner).  There was no testimony or other evidence as
to whether the trailer here would have contained a confidential VIN plate in
addition to the plates that were removed.





[18]York states in his brief,
without record references, that AChief Deputy Doug Whitehead, of the Wise County
Sheriff=s Department testified in
deposition that his intent was to convert the trailer to public use by
designating the trailer for use in homeland security and utilizing it to
distribute water to county residents in the event of a terrorist attack.@  Appellees did not
challenge this factual assertion.





[1]Mayhew v. Town of
Sunnyvale,
964 S.W.2d 922, 933 (Tex. 1998), cert. denied,
526 U.S. 1144 (1999).















 [COMMENT1]

Majority opinion on Rehearing by Justice
Livingston; Dissenting opinion on Rehearing by Chief Justice Cayce