**In re SENSITIVE CARE INC. d/b/a H.E.B. Nursing Center and Credit General Indemnity Company d/b/a Credit General Insurance Company of Texas.**

No. 2–00–039–CV.

Court of Appeals of Texas, Fort Worth.

June 8, 2000.

---

David C. McCue, McCue & Lee, Dallas, for relators.

Charles M. Noteboom, Noteboom & Gray, Hurst, John C. Tollefson, Goins, Underkofler, Crawford & Langdon, L.L.P., Dallas, for real party in interest.

Panel A: DAY, RICHARDS, and GARDNER, JJ.

## OPINION

DAVID L. RICHARDS, Justice.

### Introduction

This original proceeding involves a state court judgment rendered after the automatic stay of the bankruptcy code was in effect. We must determine whether the bankruptcy court validated the judgment or whether the judgment is void. We hold the bankruptcy court did not validate the judgment. Therefore, the judgment is void, and we conditionally grant mandamus relief.

### Background Facts and Procedural History

The underlying case is a wrongful death suit. Real party in interest Carol Rhodes sued relator Sensitive Care Inc., d/b/a H.E.B. Nursing Center, alleging that Sensitive Care's negligence caused the death of Woodrow Bryan Sellers, Rhodes's brother. Rhodes sued in her individual capacity and as administratrix of Sellers's estate. Trial began on October 5, 1998.

During trial, Sensitive Care and Rhodes entered into a high-low settlement agreement, which was dictated into the record. The low was $250,000, and the high was $750,000. On October 15, 1998, the jury returned a verdict in favor of Rhodes for $30,000 in compensatory damages and

$250 million in punitive damages. Several months passed before Rhodes moved for judgment on the verdict. Meanwhile, in February 1999, Sensitive Care was placed in involuntary bankruptcy. On March 15, 1999—apparently without knowledge of the bankruptcy proceeding—the trial court rendered judgment for Rhodes. The judgment was for the entire amount of the jury's verdict and did not include a damages cap.[1]

The bankruptcy is ongoing. In September 1999, the bankruptcy court modified the automatic stay for the limited purpose of allowing Rhodes to proceed against Sensitive Care's insurance policies—but no other assets—in the underlying case. The bankruptcy court also allowed relator Credit General Indemnity Company, d/b/a Credit General Insurance Company of Texas to defend Sensitive Care against any action based on the insurance policies. The bankruptcy court required Credit General to file with the state district clerk a $1 million bond guaranteeing performance of any state court judgment.

Once the stay was modified, relators asked the state court[2] to modify or disregard the March 1999 judgment because it is void. Relators also asked the court to enforce the high-low agreement. In response, Rhodes moved for a turnover order and argued that relators waived their right to enforce the high-low agreement by not complying with its terms in a timely manner. Rhodes contended relators were therefore liable for the full amount of the March 1999 judgment (in excess of $250 million). Rhodes asked the state court to order relators to immediately pay her $750,000 plus $245,500 in attorneys' fees

and to appoint a receiver to take all necessary steps in the bankruptcy court to effect the turnover of Sensitive Care's assets to satisfy the remainder of the March 1999 judgment. The state court denied relators' motion, granted Rhodes's motion, and issued the requested turnover order on January 20, 2000. On January 25, 2000, we stayed the turnover order pending the disposition of this original proceeding.

## Waiver

■ Rhodes contends that relators waived their right to complain of the March 1999 judgment—either on appeal or by mandamus—by entering into the high-low agreement and by not bringing Sensitive Care's involuntary bankruptcy to the trial court's attention.[3] Waiver and estoppel do not apply, however, when a trial court renders a judgment it has no power to render. *See Gem Vending, Inc. v. Walker*, 918 S.W.2d 656, 658 (Tex.App.— Fort Worth 1996, orig. proceeding); *see also Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (holding consent is irrelevant and estoppel and waiver do not apply when subject matter jurisdiction is in question); *Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 568 (5th Cir.1991) (same).

## Validity of March 1999 Judgment

■ The March 1999 judgment is void as a matter of law. When a bankruptcy petition is filed, it triggers the automatic stay under the bankruptcy code. *See* 11 U.S.C.A. § 362(a)(1) (West 1993 & Supp. 2000); *Paine v. Sealey*, 956 S.W.2d 803,

---

1. The civil practices and remedies code caps punitive damages at between $200,000 and $750,000 except where the defendant engaged in certain types of criminal activity or intentional and knowing misconduct. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.008 (Vernon 1997).

2. We sometimes refer to respondent—the state trial court—as the state court where necessary to distinguish between it and the

bankruptcy court. Otherwise, we refer to respondent as the trial court.

3. Rhodes moved for judgment on the verdict on February 26, 1999, two days after the involuntary bankruptcy proceeding was filed, and the trial court held a hearing the same day. Sensitive Care was served with the involuntary bankruptcy petition on March 1, 1999—after the hearing but two weeks before the trial court rendered judgment.

805 (Tex.App.—Houston [14th Dist.] 1997, no writ). The automatic stay deprives state courts of jurisdiction over proceedings against the debtor, and any action taken against the debtor while the stay is in place is void and without legal effect. *See Kalb v. Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940); *Howell v. Thompson*, 839 S.W.2d 92, 92 (Tex.1992); *Paine*, 956 S.W.2d at 807; *Thomas v. Miller*, 906 S.W.2d 260, 261 (Tex.App.—Texarkana 1995, orig. proceeding).[4] This is true regardless of whether a party or court learns of the stay before taking action against the debtor.[5] *See Marroquin v. D & N Funding, Inc.*, 943 S.W.2d 112, 115 (Tex.App.—Corpus Christi 1997, no writ).

Rhodes contends the March 1999 judgment is valid, not void, because the bankruptcy court retroactively lifted the stay to validate it. In the alternative, Rhodes contends the judgment is at least voidable and subject to appeal rather than mandamus.

### The Bankruptcy Court Did Not Validate the March 1999 Judgment

 The Texas Supreme Court has held that a bankruptcy court may annul a stay to validate actions taken while the stay was in effect or take some other action to recognize the invalidity of the stay. *See Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988); *see also Lawson v. Gibbs*, 591 S.W.2d 292, 295 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (holding that bankruptcy court order approving distribution of foreclosure sale proceeds invalidated stay order as to sale so that sale was not void). But the mere termination or modification of the automatic stay does not validate actions taken in violation of it. *See Nautical Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293, 296 & n. 1 (Tex.App.—Corpus Christi 1990, writ denied) (holding that order modifying stay "to permit the parties to continue the appeal of (this cause) including the rights of all parties to pursue whatever rights they might otherwise have in the appellate process" did not validate post-petition actions); *Claude Regis Vargo Enters. v. Bacarisse*, 578 S.W.2d 524, 527–28 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (distinguishing between annulling stay, which means "to abolish or invalidate" or "to make legally void," and terminating stay); *see also Sikes*, 881 F.2d at 178–79 (holding that annulment of stay operates retroactively but termination only operates prospectively).

The bankruptcy court in this case modified the automatic stay but did not annul it or take any other action to recognize its

4. Most intermediate appellate courts in Texas also adhere to this position. *See, e.g., In re Southwestern Bell Tel. Co.*, 6 S.W.3d 753, 754 (Tex.App.—Corpus Christi 1999, orig. proceeding); *Paine*, 956 S.W.2d at 805; *Baytown State Bank v. Nimmons*, 904 S.W.2d 902, 905 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Burrhus v. M & S Mach. & Supply Co.*, 897 S.W.2d 871, 873 (Tex.App.—San Antonio 1995, no writ); *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 542 (Tex.App.—Tyler 1992, writ denied). Two Texas courts have adopted the Fifth Circuit's reasoning in *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989), holding that some actions taken in violation of the automatic stay are voidable rather than void. *See Walker's Country Place, Inc. v. Central Appraisal Dist.*, 867 S.W.2d 111, 112 (Tex.App.—Eastland 1993, no writ); *Audio Data Corp. v. Monus*, 789 S.W.2d 281, 284–85 (Tex.App.—Dallas 1990, no writ).

This minority position is contrary to the Texas Supreme Court's position in *Howell*, 839 S.W.2d at 92, which was decided after *Sikes*. Although the Fifth Circuit's decisions are persuasive, we are bound only by decisions of the U.S. Supreme Court and the Texas Supreme Court. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993). Accordingly, we will follow *Kalb* and *Howell* and hold that state court actions taken in violation of the automatic stay are void.

5. Rhodes contends Credit General cannot benefit from the stay because Credit General is not a debtor in bankruptcy. But the March 1999 judgment was rendered against the debtor, Sensitive Care, and, as we discuss herein, is void. Credit General cannot be required to satisfy a void judgment.

invalidity. Indeed, instead of acting to validate the March 1999 judgment, the trial court expressly refused to rule on the matter. The record from the bankruptcy hearing shows:

THE COURT: I'm going to modify the stay. I'm not going to lift the stay. I'm going to modify it so I can keep control. If I lift it, it's gone. I'm going to modify the stay to allow ... all three parties [Rhodes and relators], to go to the state court and get a judgment in accordance with whatever their Rule 11 agreements are, whatever. I'm going to let the state court judge render and enter the final judgment, because that is going to be a starting point, the claim against the debtor.

. . . .

And whatever jumbled up mess there is, the state court judge is the person to straighten that out. . . .

. . . .

... I'm not modifying anything in the District Court of Tarrant County.

. . . .

... I'll say it again. I'm not making any orders that tamper with the record of the state court, period. I'm not an appeals court of the state court.

[CREDIT GENERAL'S COUNSEL]: I wanted to make sure that words weren't put into your mouth. With respect to the judgment that was signed by the state court during the gap period, you're not holding that that's a valid judgment?

THE COURT: I'm not holding anything. I'm modifying the stay to let everybody go back and let that judge do with his case what he deems necessary.

And then the parties and this court will deal with, as I said, whatever we have.

. . . .

[RHODES'S COUNSEL]: There is nothing before this Honor today to deal with declaring void or invalid, anything about that judgment. And I think it's improper on this record for this court to enter into that. I think you've lifted the stay. The parties can go back to the state court. And I think that's the right thing to do.

Likewise, the bankruptcy court's order simply modified the stay "to allow the parties to return to the State Court for the Court to take such action, as the State Court deems appropriate under the circumstances."[6]

### The March 1999 Judgment is Not Voidable Under Texas Law

Although the bankruptcy court recognized that actions taken in violation of the automatic stay are voidable under Fifth Circuit case law, the court did not rule that the March 1999 judgment was voidable under Texas law. Once the matter was returned to state court, the trial court did not have the option of deciding whether the judgment was voidable and did not have the authority to validate or reaffirm the judgment. *See Audio Data Corp.,* 789 S.W.2d at 287 (holding that only bankruptcy court can validate a voidable judgment, and state court has no authority to do so). The Texas Supreme Court has ruled that state court actions taken in violation of the automatic stay must be validated *by the bankruptcy court* or they are void. *See Howell,* 839 S.W.2d at 92; *Gos-*

---

6. The cases on which Rhodes relies are distinguishable from this situation because the orders in those cases were clearly intended to validate otherwise invalid state court actions or they were blanket orders governing multiple parties without reference to who had acted in violation of the automatic stay. *See In re Chunn,* 106 F.3d 1239, 1242 (5 th Cir.1997) (holding that bankruptcy court's order lifting stay to permit state court to enter and enforce temporary orders for spousal support in di-

vorce proceeding, including contempt orders, cured any defect in post-petition temporary orders); *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 848, 850 (5 th Cir.1990) (holding that blanket order lifting automatic stay so numerous parties could pursue actions against debtor in state court operated to annul rather than terminate automatic stay as to those parties); *Sikes,* 881 F.2d at 178–79 (same).

*wami,* 751 S.W.2d at 489. Consequently, the March 1999 judgment is void under Texas law, and the trial court had no choice but to vacate it. *See Thomas,* 906 S.W.2d at 262 (holding that trial court has not only power but duty to vacate a void judgment).[7]

## Res Judicata

Rhodes contends the bankruptcy court's agreed order modifying the stay dismissed with prejudice Credit General's claims on behalf of Sensitive Care against Rhodes, including a claim for declaratory relief that the March 1999 judgment is void. Thus, Rhodes asserts relators are barred by the doctrine of res judicata from relitigating this issue in state court. Rhodes also asserts she never would have agreed to leave the bankruptcy court, which would have followed Fifth Circuit law and ruled that the judgment was merely voidable, without the benefit of the dismissal order. The record shows, however, that Rhodes had no choice in the matter. At the bankruptcy hearing, the bankruptcy court—not Rhodes—stated it was going to modify the stay and return the parties to state court so the state court could "render ... [a] final judgment." The specific intent of the bankruptcy court—as expressed both at the hearing and in the agreed order—was simply to modify the automatic stay, not to annul it or take any other action to recognize its invalidity, or to validate the March 1999 judgment. Therefore, we will not construe the agreed order as having a preclusive effect on the issue of whether the March 1999 judgment is void. Moreover, even if

dismissal of Credit General's claim for declaratory relief were given preclusive effect, only the bankruptcy court could have validated the March 1999 judgment. *See Audio Data Corp.,* 789 S.W.2d at 287 (holding that only bankruptcy court can validate a voidable judgment); *see also Sikes,* 881 F.2d at 178–79 & n. 2 (holding that bankruptcy court's power to annul automatic stay authorizes court to validate actions taken in violation of automatic stay); *Paine,* 956 S.W.2d at 806 (noting that Fifth Circuit's determination that actions taken in violation of automatic stay are "voidable" does not mean a disputed action is valid unless invalidated, but void unless validated by bankruptcy court). As we have discussed, the bankruptcy court did not validate the March 1999 judgment, and the state court had no authority to do so.

## Propriety of Mandamus Relief From Judgment and Turnover Order

Mandamus is the proper method by which to attack a void judgment.[8] *See Gem Vending,* 918 S.W.2d at 658; *see also Buttery v. Betts,* 422 S.W.2d 149, 151 (Tex.1967) (orig.proceeding); *J.A. Bitter & Assocs. v. Haberman,* 834 S.W.2d 383, 384 (Tex.App.—San Antonio 1992, orig. proceeding). Consequently, relators are entitled to a writ of mandamus directing the trial court to vacate the March 1999 judgment.

The January 2000 turnover order is also improper because it is based on a void judgment. As a general rule turn-

---

7. Rhodes contends the provision in the bankruptcy court's order giving the state court authority to "take such action, as the State Court deems appropriate under the circumstances" gave the state court the option of not going through the "empty exercise" of vacating the March 1999 judgment if it chose not to. There is nothing in the bankruptcy court's order authorizing the trial court to contravene Texas law, and we view adherence to the Texas Supreme Court precedent as mandatory and "appropriate under the circumstances" rather than an empty exercise.

8. Rhodes asserts relators' sole remedy is a bill of review because the deadline for modifying or appealing from the March 1999 judgment is past. This assertion requires an incorrect assumption—that the appellate timetable and the deadlines for filing post-judgment motions under Tex.R. Civ. P. 329b were triggered by rendition of the March 1999 judgment. Because the judgment is void, these rules do not apply.

over orders are final, appealable orders. *See Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 909 S.W.2d 505, 506 (Tex. 1995). Mandamus relief is usually not available if the order complained of is appealable, because an appeal is almost always an adequate remedy at law. *See Republican Party v. Dietz*, 940 S.W.2d 86, 88 (Tex.1997) (orig.proceeding). "But on rare occasions an appellate remedy, generally adequate, may become inadequate because the circumstances are exceptional." *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999) (orig.proceeding) (holding that mandamus relief is appropriate where trial court's actions show such disregard for guiding principles of law that resulting harm is irreparable). We believe the exceptional circumstances of this case warrant mandamus relief from the turnover order despite the availability of an appeal.

### Relators' Remaining Issues

Relators also complain that the trial court did not apply the punitive damages cap of chapter 41 of the Texas Civil Practice and Remedies Code in the March 1999 judgment and failed to enforce the parties' high-low settlement agreement. These complaints are premature and should not be addressed until after the trial court has an opportunity to vacate the March 1999 judgment and render a new one. Accordingly, we deny relators' petition for a writ of mandamus as to these issues.

### Conclusion

We vacate our January 25, 2000 order staying the trial court's turnover order. Relators are entitled to a writ of mandamus directing the trial court to vacate the March 1999 judgment and the January 2000 turnover order. We are confident that the trial court will vacate its judgment and order, and our writ will issue only if the trial court refuses to do so.