

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-118-CV

LARRY YORK D/B/A                                          APPELLANT
YORK TANK TRUCKS

V.

STATE OF TEXAS AND
WISE COUNTY, TEXAS                                        APPELLEES

------------

FROM THE COUNTY COURT AT LAW OF WISE COUNTY

------------

## OPINION ON REHEARING

------------

After considering the motions for rehearing filed by appellant and both appellees, we deny all four motions, but we withdraw our prior opinion and judgment of June 11, 2009 and substitute the following to make nonsubstantive clarifications.

Appellant Larry York d/b/a York Tank Trucks (York) appeals from the trial court's order dismissing York's suit against appellees State of Texas and Wise

County, Texas for want of jurisdiction. In seven issues, York challenges the trial court's conclusions of law supporting its dismissal orders, as well as appellees' other grounds for dismissal in their pleas to the jurisdiction. We affirm in part and reverse and remand in part.

## Background Facts

On October 29, 2006, Trooper Tim Godwin, a Texas Department of Public Safety (DPS) officer, seized and impounded a tank trailer bearing the license plate number W41 503 because the vehicle identification number (VIN) had been removed. Upon checking the license plate number, DPS determined that the registered owner of the trailer was listed as McNutt Co. in Snyder, Texas. Instead of contacting McNutt Co., however, Sergeant David Martinez contacted York. York Vacuum was listed on the registration receipt, which expired in October 2006, as the "renewal recipient," and the vehicle location was shown as an address in Bridgeport.[1] Also, "York" was painted on the side of the trailer. York explained that he owned the trailer but that the title had not been transferred. He stated that the VIN plates had been removed and presumably destroyed while the trailer was being repaired.[2] Sergeant Martinez

_____

[1] York's business is located in nearby Paradise.

[2] According to York, the trailer was sandblasted and then repainted several months before the stop. During that process, the painters removed the

2

asked a DPS Motor Vehicle Theft Analyst to search for similar trailers in Texas. The analyst located five, only one of which was currently registered. According to Sergeant Martinez,

> Without the VIN, I had no way of determining whether the trailer matched an MD trailer currently registered in Texas or whether the trailer was stolen and brought in from out of state. No further action was taken because Mr. York indicated that all parts with the VIN attached had been destroyed.

However, there were no reports of a stolen trailer similar to the one seized.

Although York requested that the trailer be returned to him, on February 16, 2007, *the State*, through Sergeant Martinez, petitioned a Wise County magistrate to dispose of the property as stolen under chapter 47 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. arts. 47.01–12 (Vernon 2006 and Supp. 2009); Tex. Transp. Code Ann. § 501.158 (Vernon 2007) (providing that vehicle with removed, altered, or obliterated VIN may be treated as stolen for purposes of custody and disposition).

On March 29, 2007, York and Trooper Martinez appeared in Justice of the Peace Court No. 2 in Wise County. According to York, he "presented a substantial amount of evidence showing [his] ownership in and right to

---

VIN plates and forgot to reattach them. York did not know the VIN plates were missing and no one could find them after the seizure. The fifth wheel plate, which also had the VIN stamped on it, had been removed and discarded.

possession of the tank trailer," including his "testimony, several photographs of the trailer with the other vehicles" he owned, "the billing records for having the trailer converted to a tank trailer, repair records on the trailer, records showing [he] insured the vehicle, inspection records from [DPS], and Registration Renewal Receipts from the State." Also according to York, no evidence was presented that the trailer was actually lost or stolen. Even so, the justice court awarded the trailer *to the State* and ordered that it be used or disposed of by the Wise County Sheriff's Department at its discretion.[3] York failed to timely appeal although he attempted to do so.[4] *See* Tex. Code Crim. Proc. Ann. art. 47.12(c) (requiring appellant to give oral notice of appeal immediately after decision and to post bond); *Phillips v. State*, 77 S.W.3d 465, 466–67 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *White v. State*, 930 S.W.2d 673, 676 (Tex. App.—Waco 1996, no writ). The trailer has remained locked and fenced in since that time, and the markings for York's business have been removed.

---

[3] The justice court's order states that "[j]udgment is ruled to the Court upon good and sufficient evidence that Plaintiff [the State] is entitled to recover judgment."

[4] York later filed a bill of review in the justice court, which was denied. He did not appeal the denial.

On August 22, 2007, York sued appellees. He alleged that when DPS seized the trailer, and when the justice court awarded it to appellees, the trailer was part of York's bankruptcy estate under a January 14, 2003 filing that had not yet been discharged. York sought a declaratory judgment that the justice court's order was void because it was rendered in violation of the bankruptcy code's automatic stay. *See* 11 U.S.C.A. § 362(a)(3) (West 2004). He also raised a takings claim under article I, section 17 of the Texas constitution, seeking damages.[5] Tex. Const. art. I, § 17. In their answers, appellees asserted sovereign immunity from suit and liability. In addition, they both filed pleas to the jurisdiction on the same grounds; they also alleged that York had not proven that the trailer was part of the bankruptcy estate, that only the bankruptcy court could determine whether it was included in the estate, and that even if it was, the order was voidable, not void. They further alleged that because the trailer was stolen, the justice court's action fell within the exercise of police or regulatory power exception to the automatic bankruptcy stay. *See* 11 U.S.C.A. § 362(b)(4). York filed traditional and no-evidence motions for summary judgment on both appellees' immunity defenses and jurisdictional allegations.

---

[5] York initially pled a claim for conversion, but he dropped it in his first amended petition.

The trial court initially granted the State's plea to the jurisdiction. York then filed a motion for reconsideration, in which he asked to present new evidence showing that McNutt Co. had sold his father the trailer during the late 1980s or early 1990s and that York had bought the trailer, along with the other assets of his father's business, in 1993. He financed the sale through a loan from Roscoe State Bank, which took a lien on the business's assets, including the trailer. York never obtained a certificate of title to the trailer in his name because his father originally planned to scrap the trailer for parts; because his father never did so, the trailer sat unused for several years. York decided to put the trailer into service in 1999; he obtained a new license plate, began having the trailer inspected by DPS, and started registering it with the State. The trial court granted York's motion for reconsideration.

York filed a second amended petition, in which he alleged the new facts showing his ownership of the trailer and explaining why the VIN plates were missing. He also alleged a new declaratory judgment claim: that the proceeding in the justice court violated his substantive and procedural due process rights because chapter 47 does not require a prompt hearing once property is seized as stolen; that chapter 47 does not provide for a fair and meaningful hearing—as evidenced by the fact that during a five-year period preceding York's suit, the justice court had awarded Wise County property

6

seized for lack of a VIN in "virtually every case," except one involving a Wise County Commissioner; and that the statutory deadlines for perfecting an appeal are "wholly unreasonable and violate the due process rights of [York] and others involved in such hearings."

Appellees responded by filing supplements to their pleas to the jurisdiction. In those responses, the State contended that only the bankruptcy court in which York's case was pending could determine whether the trailer was a part of the bankruptcy estate, that York's suit should be against the justice court rather than appellees, that the seizure of the trailer under section 501.158 of the transportation code was not a taking under article I, section 17 of the Texas constitution, and that they are immune from the newly pled due process claims. The State presented evidence that York attempted to file an undated notice of appeal, which has the following handwritten notation, "4-9-07 No Bond required per Judge. Respondent is not in possession of property." The notation is signed "X Judge Johnson." Also attached to the supplemental response is a copy of a petition for bill of review that York filed in the Justice Court Precinct No. 2 of Wise County, contending that he failed to meet the oral notice of appeal requirement due to accident or official mistake because he appeared without counsel and no record was made. The justice court denied the bill of review, concluding that York did not have a meritorious defense.

7

York subsequently filed affidavits from Tyson Schiflett, the owner of the painting business; Brian Studdard, a senior Vice President for Roscoe State Bank, which claimed a lien on the trailer; and Lyndia McNutt. Schiflett averred that his painters removed the VIN plates from the trailer and "failed to rivet" them back onto the trailer when they were finished. Although he searched for the VIN plates after York contacted him, he was unable to locate them. According to Schiflett, they had "probably been lost or discarded."

Studdard averred that the trailer was accepted by the bank as collateral for a loan to York and that the bank currently held a lien on the trailer. The bank was never notified of the proceedings in the justice of the peace court. Studdard also averred that York had delivered a true and correct copy of title to the trailer in his name. Attached to his affidavit was a copy of a Texas certificate of title to the trailer listing (on the back in the "Assignment of Title" space) the owner as McNutt Co., and signed by David McNutt and Larry Wayne York. Also attached is a recorded UCC-1 financing statement showing the bank's secured interest in the trailer.

McNutt averred in her affidavit that her late husband, Harold McNutt, sold the trailer to York's father and that David McNutt subsequently signed over title on behalf of McNutt Co. Attached to her affidavit is the same certificate of title with the assignment from McNutt Co. to Larry Wayne York. She averred that

8

David McNutt was authorized to sign the assignment and that his signature on the certificate is genuine.

After a hearing, the trial court sent the parties a letter attaching the following ruling and asking for an order to be prepared:

> After hearing further argument of counsel, and reading the briefs submitted by the parties, the Court is of the opinion that it lacks jurisdiction to hear this matter, both as to the State of Texas, and the County of Wise. If the Court takes everything as true on behalf of [York], the Court is left with the following:

> No direct appeal was made from the evidentiary hearing before the Justice of the Peace Court. Therefore, the matter became final and appealable as a matter of law.

> The Declaratory Judgment[s] Act's purpose is to allow a procedural device for deciding cases already within the court's jurisdiction, not create a substantive cause of action. Since this court does not have jurisdiction over a case that became final and unappealable at the Justice Court level, this Court has no ability to hear a Declaratory Judgment case as a matter of law. A contrary opinion of the law would amount to creating a new cause of action in collaterally attacking any level of court decisions that have become procedurally final.

> The Court is of the opinion that the Justice Court's ruling is voidable, not void, and the Bankruptcy Court is the only proper forum for deciding whether or not the public policy exception is applicable to the bankruptcy stay regarding the trailer.

> Therefore, the Court grants both Defendants' Pleas to the Jurisdiction of the Court. *The Court does not reach the issues of whether or not a taking occurred*, or whether or not sovereign immunity applies in this case. [Emphasis added.]

Thereafter, the trial court signed two orders granting each appellee's plea to the jurisdiction; the trial court's orders each state that, granted in conjunction with the other order, they "dismiss[] *all claims and parties* to this suit and . . . operate as a final judgment in this action." [Emphasis added.]

Upon York's request, the trial court filed findings of fact and conclusions of law. York appeals from the trial court's final orders dismissing the case for want of jurisdiction.

Standard of Review—Plea to the Jurisdiction

We review the trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26, 228 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *City of Carrollton v. Singer*, 232 S.W.3d 790, 794 (Tex. App.—Fort Worth 2007, pet. denied). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, or whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction, is a question of law. *Miranda*, 133 S.W.3d at 226; *City of Carrollton*, 232 S.W.3d at 794.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus.*

10

*v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).  We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

But if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Miranda*, 133 S.W.3d at 227; *Bland ISD v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *Tex. Dep't of Pub. Safety v. Andrews*, 155 S.W.3d 351, 355 (Tex. App.—Fort Worth 2004, pet. denied).  If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder.  *Miranda*, 133 S.W.3d at 227–28; *Andrews*, 155 S.W.3d at 355.  But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Andrews*, 155 S.W.3d at 355.  This standard generally mirrors that of a traditional summary judgment.  *Miranda*, 133 S.W.3d at 228; *see* Tex. R. Civ. P. 166a(c).

Correctness of Conclusions of Law Upon Which Ruling is Based

In his first five issues, York challenges the trial court's conclusions of law. We may review conclusions of law to determine their correctness based upon

11

the facts. *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 256 (Tex. App.—Fort Worth 2006, no pet.); *Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

The trial court concluded as follows:

1.    [The] Chapter 47 evidentiary hearing has become final and unappealable.

2.    The County Court at Law has no direct jurisdiction over the Chapter 47 evidentiary hearing, because there was no appeal perfected by [York].

3.    The Declaratory Judgment[s] Act does not confer jurisdiction upon the County Court at Law in order to allow a collateral attack upon the final judgment of the Precinct 2 Justice Court.

4.    The proper forum for deciding whether or not an item of property is included in an existing bankruptcy case is the Bankruptcy Court where said case is filed.

5.    The Precinct 2 Justice Court's judgment is voidable only (not void), subject to a ruling of the Bankruptcy Court that (1) the property in question is part of the bankruptcy estate, and (2) that the police power exception does not apply.

Finality of Justice Court's Judgment

York contends in his second issue that the trial court's first conclusion is erroneous because the justice court's decision cannot be final and unappealable

12

if it is void, as York claims.[6] But a void judgment may nevertheless still be final in the sense that a direct appeal is no longer available once the appellate filing deadlines have passed. *See Newsom v. Ballinger ISD*, 213 S.W.3d 375, 380 (Tex. App.—Austin 2006, no pet.); *In re Vlasak*, 141 S.W.3d 233, 237–38 (Tex. App.—San Antonio 2004, orig. proceeding). Accordingly, we overrule York's second issue challenging the trial court's first conclusion of law.

Proper Court to Determine Applicability of Stay

York's first and fifth issues challenge the trial court's fourth and fifth conclusions of law: that the proper forum for deciding if the trailer is part of the bankruptcy estate is the bankruptcy court in which the case was filed and that the justice court's decision is voidable only, subject to the bankruptcy court's determination that the property is part of the bankruptcy estate and that the police power exception to the automatic stay is inapplicable.

The filing of a bankruptcy petition triggers the automatic stay under the bankruptcy code. 11 U.S.C.A. § 362(a)(1); *In re Sensitive Care, Inc.*, 28 S.W.3d 35, 38–39 (Tex. App.—Fort Worth 2000, orig. proceeding). The automatic stay deprives state courts of jurisdiction over proceedings against the

---

[6] None of the trial court's findings and conclusions provides support for its dismissal of York's takings claim. Accordingly, we will review the propriety of the dismissal of that claim in our analysis of appellees' other challenges to the trial court's jurisdiction.

13

debtor, and any action taken against the debtor while the stay is in place is *void* and without legal effect. *In re Sensitive Care*, 28 S.W.3d at 39; *see Kalb v. Feuerstein*, 308 U.S. 433, 439, 60 S. Ct. 343, 346 (1940); *Howell v. Thompson*, 839 S.W.2d 92, 92 (Tex. 1992). This is true regardless of whether a party or the state court learns of the stay before taking action against the debtor. *In re Sensitive Care*, 28 S.W.3d at 39.

Bankruptcy courts do not have exclusive jurisdiction to determine whether and to what property the automatic stay applies; a state court in which an action is pending may determine whether a stay divests it of jurisdiction. *In re McDaniel*, 149 S.W.3d 860, 861 (Tex. App.—Waco 2004, order); *Bamburg v. Townsend*, 35 S.W.3d 85, 88 (Tex. App.—Texarkana 2000, no pet.); *see, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1106 (9th Cir. 2005); *Chao v. Hosp. Staffing Servs.*, 270 F.3d 374, 382–85 (6th Cir. 2001); *cf. Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007) ("Courts always have jurisdiction to determine their own jurisdiction."). If the state court decides that the stay does not apply, however, it runs the risk of the bankruptcy court later disagreeing; if the bankruptcy court later determines that the stay did apply, the state or district court's judgment is void ab initio. *Lockyer*, 398 F.3d at 1106; *Chao*, 270 F.3d at 382–85. But if the bankruptcy court decides that the state or district court correctly determined that the stay

did not apply, the state court proceedings are not void. *Lockyer*, 398 F.3d at 1106; *Chao*, 270 F.3d at 382–85. In other words, the state court's holding is not entitled to preclusive effect in the bankruptcy court if later challenged in that forum. *Lockyer*, 398 F.3d at 1106.

Appellees did not urge forum non conveniens grounds here, i.e., that the bankruptcy court was a more appropriate forum to determine applicability of the stay. Instead, they argued that the county court at law was completely devoid of jurisdiction to determine the stay's applicability. Thus, the trial court's fourth conclusion is erroneous. Likewise, a trial court's judgment taken in violation of the automatic stay—as alleged here—is void, not voidable; just because a state court's determination of the applicability of a stay is subject to later validation or invalidation by the bankruptcy court does not turn a void action into a voidable one. *See In re De la Garza*, 159 S.W.3d 119, 120–21 (Tex. App.—Corpus Christi 2004, orig. proceeding); *Paine v. Sealy*, 956 S.W.2d 803, 805–07 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Chunn v. Chunn*, 929 S.W.2d 490, 493 (Tex. App.—Houston [1st Dist.] 1996, order). That the allegation of voidness is on collateral rather than direct attack is of no import to this aspect of the trial court's judgment. Accordingly, we conclude and hold that the trial court's fourth and fifth conclusions of law are erroneous. We sustain York's first and fifth issues.

15

Jurisdiction Under Uniform Declaratory Judgments Act

York contends in his third and fourth issues that the trial court's third conclusion—that the trial court has no jurisdiction under the Uniform Declaratory Judgments Act (DJA) to hear a collateral attack upon the justice court's decision—is erroneous.

The DJA provides that it is to "be liberally construed and administered" to fulfill its purpose "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 2008). A court of record may, "within its jurisdiction[,] . . . declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Id*. § 37.003(a). The subject matter of a declaratory judgment action includes a "declaration of rights, status, or other legal relations" of any question of construction or validity arising under a statute when the person's "rights, status, or other legal relations are affected by [the] statute." *Id*. § 37.004(a).

Whether a court has subject matter jurisdiction in a declaratory judgment action depends upon whether the underlying controversy is within the constitutional and statutory jurisdiction of that court. *Monk v. Pomberg*, 263 S.W.3d 199, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g); *Nelson v. Regions Mortgage, Inc.*, 170 S.W.3d 858, 863 (Tex.

16

App.—Dallas 2005, no pet.).  It is well settled that the DJA is not a grant of jurisdiction; rather, it is a procedural device for deciding cases already within a court's jurisdiction.  *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996); *City of Houston v. Buttitta*, 274 S.W.3d 850, 853 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (op. on reh'g).

Here, York claims that the justice court's order awarding the property to the State for the benefit of the Wise County Sheriff's Office is void because it was in violation of the bankruptcy stay and, therefore, the justice court was without jurisdiction to enter it.  Judgments—even final ones—that are void for jurisdictional defects are subject to collateral attack.  *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 294–95 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Zarate v. Sun Operating, Ltd.*, 40 S.W.3d 617, 620–21 (Tex. App.—San Antonio 2001, pet. denied).  But the ability to collaterally attack a judgment is limited by the long-standing and well-settled rule that we must presume the validity of the judgment under attack and, thus, extrinsic evidence may not be used to establish a lack of jurisdiction.  *See In re A.G.G.*, 267 S.W.3d 165, 169 (Tex. App.—San Antonio 2008, pet. denied) (holding that extrinsic evidence of applicability of automatic stay could not be considered because divorce decree, on its face, recited that trial court had jurisdiction of matter and no evidence in

17

record of divorce proceeding affirmatively showed that automatic stay deprived trial court of jurisdiction); *Toles v. Toles*, 113 S.W.3d 899, 914 (Tex. App.—Dallas 2003, no pet.); *Davis v. Boone*, 786 S.W.2d 85, 87 n.3 (Tex. App.—San Antonio 1990, no writ).[7] *But see S. County Mut. Ins. Co. v. Powell*, 736 S.W.2d 745, 749–50 (Tex. App.—Houston [14th Dist.] 1987, no writ) (holding, in dictum, that extrinsic evidence should be permissible to show applicability of automatic stay in collateral attack against judgment). To prevail on a collateral attack, the challenger must show that the judgment is void on its face. *In re A.G.G.*, 267 S.W.3d at 169; *Sotelo v. Scherr*, 242 S.W.3d 823, 830 (Tex. App.—El Paso 2007, no pet.).

Here, nothing in the parts of the justice court record presented as evidence shows that the justice court did not have jurisdiction, that York had filed for bankruptcy, or that the automatic stay affected the proceeding. To determine these matters, extrinsic evidence—such as that introduced in the county court at law proceedings—must be considered. Accordingly, the trial court did not have jurisdiction to consider a collateral attack on the justice court's judgment because it is presumed regular and there is no nonextrinsic

---

[7] *... See also, e.g., Treadway v. Eastburn*, 57 Tex. 209, 1882 WL 9490 (1881); *Switzer v. Smith*, 300 S.W. 31, 33 (Tex. Comm'n App. 1927, judgm't adopted).

18

evidence showing that it is void due to the applicability of the automatic stay.[8]

*See In re A.G.G.*, 267 S.W.3d at 169. We conclude and hold that the trial court could not hear the dispute independently of the DJA;[9] thus, it could not hear the dispute within the procedural framework of the DJA. *See Chenault*, 914 S.W.2d at 141; *Buttitta*, 274 S.W.3d at 853.

In addition, York may not collaterally attack the justice court's judgment based on the alleged unconstitutionality of article 47.01a. A challenge to the constitutionality of a criminal statute must be brought in the trial court or it is forfeited. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *see White*, 930 S.W.2d at 675 (holding that action under 47.01a is a criminal case because trial court functions in its capacity as a criminal magistrate). That a criminal proceeding is based upon an unconstitutional statute does not render that proceeding void if the trial court otherwise has jurisdiction. *See Karenev*,

---

[8] On rehearing, York contends that the application of this rule frustrates the purpose of the automatic stay. But the rule is based upon a competing and equally valid principle, that of the need for "absolute verity" of judgments that appear regular and are no longer subject to direct attack. *See Treadway*, 1882 WL 9490, at *4–5. York could have raised the pending bankruptcy proceeding in the justice court, thereby making the judgment subject to collateral attack, but he failed to do so. In addition, extrinsic evidence is available to challenge a void judgment in a direct attack, such as in a bill of review.

[9] *See Bland ISD v. Blue*, 34 S.W.3d 547, 553–55 (Tex. 2000) (holding that sometimes court must look at facts involving merits of claim to determine its jurisdiction to hear claim).

19

281 S.W.3d at 432. The only part of York's constitutional complaint that appears to implicate the justice court's subject matter jurisdiction is his assertion that the value of the property disposed of could exceed the court's monetary jurisdiction in civil cases. But that complaint is not implicated here because the justice court was acting in its capacity as a criminal magistrate. *See* Tex. Code Crim. Proc. Ann. art. 47.01a; *White*, 930 S.W.2d at 675.

And even if the statute is more properly characterized as civil in nature, if a civil court renders judgment on a claim that is within its subject matter jurisdiction, but a relevant statute is determined to be unconstitutional on its face, the judgment is merely rendered erroneous or voidable, not void. *In re R.B.*, 225 S.W.3d 798, 802 (Tex. App.—Fort Worth 2007, no pet.); *see Mass. v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 220 (1942), *cert. denied*, 320 U.S. 210 (1943); *Kaye v. Harris County Mun. Util. Dist.*, 866 S.W.2d 791, 795–96 (Tex. App.—Houston [14th Dist.] 1993, no writ); *Dallas Mkt. Ctr. Dev. Co. v. Beran & Shelmire*, 824 S.W.2d 218, 222–23 (Tex. App.—Dallas 1992, writ denied). Thus, we conclude and hold that the trial court did not have jurisdiction to hear a collateral attack on the constitutionality of article 47.01a in an action under the DJA. Because the trial court did not have jurisdiction to consider York's declaratory judgment complaints under the DJA, we conclude

and hold that the trial court's third conclusion of law is not erroneous. We overrule York's third and fourth issues.

We are left, then, with York's takings claim, which is an entirely new cause of action pled in the alternative and which presumes the finality of the justice court's judgment and seeks damages because of that judgment's effect. Unlike York's declaratory judgment claim, his takings claim is not a collateral attack and therefore not subject to the extrinsic evidence rule discussed above.

None of the trial court's findings and conclusions support its dismissal of York's takings claim, and the trial court specifically declined to rule on that claim. Thus, we must determine whether appellees' other asserted reasons for defeating jurisdiction apply.

Sovereign and Governmental Immunity - Takings Claim

Appellees contended in the trial court that they are entitled to sovereign and governmental immunity[10] from suit; the trial court did not rule on these

---

[10] Sovereign immunity refers to the State's immunity while governmental immunity refers to the immunity of political subdivisions of the State, including counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *Sanders v. City of Grapevine*, 218 S.W.3d 772, 776 n.1 (Tex. App.—Fort Worth 2007, pets. denied). For ease of reference, we will refer to both as sovereign immunity.

jurisdictional challenges.[11]  But because immunity implicates subject matter jurisdiction, it may be reviewed on appeal regardless of whether the trial court expressly ruled on that issue.  *See Miranda*, 133 S.W.3d at 225–26; *City of Carrollton*, 232 S.W.3d at 794.  Therefore, we address appellees' contentions that they are immune from suit as to York's pled takings claim.

Appellees contended in the trial court that their immunity had not been waived under the Texas Tort Claims Act.  But York nonsuited his only tort claim, and he contends that appellees' immunity as to his takings claim is waived by the takings clause of the Texas constitution rather than the Tort Claims Act.  Accordingly, we will consider whether article I, section 17 waives appellees' immunity to York's claim.

Appellees also contend that York's pleadings belie the existence of a valid takings claim because he claimed that they are illegally holding his trailer; thus, their actions could not constitute a valid, intentional taking of property for public use.  In other words, appellees claim that a takings claim lies only for property legally obtained by a governmental entity.

---

[11] Appellees also contended that they are immune from liability, which, as an affirmative defense, is not a jurisdictional matter.  *See Miranda*, 133 S.W.3d at 224; *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *City of Carrollton*, 232 S.W.3d at 795.

The Texas constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. By its plain terms, this takings provision does not limit the government's power to take private property for public use but instead requires that a taking be compensated; physical possession is, categorically, a taking for which compensation is constitutionally mandated. *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669–70 (Tex. 2004).

Article I, section 17 waives governmental immunity for actions seeking compensation under that provision. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 395 (Tex. App.—Fort Worth 2008, no pet.). To establish a takings claim, a claimant must prove that (1) a governmental entity intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Little-Tex Insulation Co.*, 39 S.W.3d at 598; *Tex. Bay Cherry Hill*, 257 S.W.3d at 395.

When a plaintiff fails to allege facts that would support a valid takings claim, governmental immunity applies, and the trial court should grant a plea to the jurisdiction. *Little-Tex Insulation Co.*, 39 S.W.3d at 600; *Tex. Bay Cherry Hill*, 257 S.W.3d at 395. Whether alleged facts constitute a takings claim is

23

a question of law. *Little-Tex Insulation Co.*, 39 S.W.3d at 598; *Tex. Bay Cherry Hill*, 257 S.W.3d at 395. Thus, we must determine whether appellees' challenges to York's pled takings claim are sufficient to defeat jurisdiction.

Appellees have alleged that "[t]he exercise of police powers in seizing and impounding the trailer by DPS officials is authorized under state law [as] a valid, proper, and reasonable exercise of police powers"; therefore, "[t]here can be no compensable taking for the 'seizure and impounding' of the trailer by DPS officials."[12] But even the valid exercise of police power does not bar a takings claim under article I, section 17 if the taking was for a "public use." *See Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980); *City of Dallas v. VSC, LLC*, 242 S.W.3d 584, 591–92 (Tex. App.—Dallas 2008, pet. filed); *Sefzik v. City of McKinney*, 198 S.W.3d 884, 898 (Tex. App.—Dallas 2006, no pet.) (quoting *DuPuy v. City of Waco*, 396 S.W.2d 103, 107 n.3 (Tex. 1965)).

Appellees further alleged that because York also pled that the justice court acted outside its jurisdiction in awarding the property to appellees that he

---

[12] York clarified in his reply brief that he does not contend that the initial seizure of the trailer constituted a compensable taking, but rather that appellees' continued possession and assertion of rights to the trailer constitute such a taking. Although the State contends on rehearing that it has never possessed the trailer, and therefore cannot be responsible under a takings theory for its continued possession, the State filed the justice court action in its name, and the justice court awarded the trailer *to the State*, for the County's use or disposal.

24

did not allege a lawful taking. However, as York made clear in his response, he was not alleging that the justice of the peace acted "unlawfully," as in completely outside her authority as a judge; he simply contends that in exercising her valid judicial authority, she ruled in a case in which the court did not have subject matter jurisdiction of the action brought by appellees and that, as a result, appellees continue to intentionally possess his trailer for public use. Accordingly, York's allegations that the justice court lacked subject matter jurisdiction because of the bankruptcy stay do not defeat his takings claim. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945).

Appellees further allege that a valid takings claim requires that the governmental entity act pursuant to its eminent domain powers and that the DPS officials and the justice of the peace were acting "under color of right" granted by article 47.01a rather than exercising their eminent domain powers. But this is not a valid challenge to a takings claim. *See Steele*, 603 S.W.2d at 789; *VSC*, 242 S.W.3d at 592–93; *Tex. Workforce Comm'n v. MidFirst Bank*, 40 S.W.3d 690, 697 (Tex. App.—Austin 2001, pet. denied). Indeed, it would negate the validity of inverse condemnation claims based on regulatory actions (rather than actual physical takings), which have long been permissible in Texas. *See, e.g., Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex.

1998) (holding that zoning ordinance can effect a regulatory taking if the ordinance "does not substantially advance legitimate state interests" or denies an owner all "economically viable use of his land"), *cert. denied*, 526 U.S. 1144 (1999). We conclude and hold that the dismissal cannot be upheld based on appellees' challenges to the validity of York's alleged takings claim.

The crux of York's complaint, then, seems to hinge on this issue: whether appellees, with knowledge that York actually owned the trailer, intentionally utilized article 47.01a to divest him of ownership. In arguing this issue, appellees contend that York cannot bring a takings claim as to the trailer because it is deemed stolen by virtue of the missing VIN plates; therefore, he has no legally cognizable property interest in the trailer. York, however, alleged in his Second Amended Petition that the justice court had awarded Wise County property seized for lack of a VIN in "virtually every case" over a five-year period, except one involving a Wise County Commissioner. A fair reading of his complaint is that the county, at least, has been using the statute as a means to take physical possession of property owned by private citizens without compensation.

Indeed, appellees' interpretation of the statute appears to lend at least some support to this theory. Appellees repeatedly refer to article 47.01a as a forfeiture statute. A civil forfeiture action is an in rem proceeding against

26

contraband. *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 692 (Tex. 2004). Civil forfeiture statutes are typically remedial rather than punitive and serve to deter criminal behavior by imposing an economic penalty upon property itself, rather than an individual. *See Fant v. State*, 931 S.W.2d 299, 304–08 (Tex. Crim. App. 1996); *Prear v. State*, 933 S.W.2d 643, 646 (Tex. App.—San Antonio 1996, no pet.). Under Chapter 59 of the code of criminal procedure, even an owner can lose his or her interest in property that was used or intended to be used in the commission of certain felonies. *See* Tex. Code Crim. Proc. Ann. § 59.02(c)(1) (Vernon 2006) (providing that owner's property may not be forfeited only if owner "did not know or should not reasonably have known of the act or omission giving rise to the forfeiture or that it was likely to occur").

The purpose of article 47.01a, in contrast, is to return property to its rightful owner, not to enable the State to obtain property as a means to deter criminal activity through the imposition of an economic penalty. *See* Act of May 27, 1977, 65th Leg., R.S., ch. 813, 1977 Tex Gen. Laws 2034, 2034 (describing act creating article 47.01a as "relating to the return of stolen property to the rightful owner when no criminal trial is pending"); *Universal Underwriters Group v. State*, 283 S.W.3d 897, 899–901 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding State not entitled to retain stolen property under article 47.01a simply because rightful owner's gross negligence made it

27

possible for thief to steal it); *White*, 930 S.W.2d at 676 n.2 (considering legislative history of appeal provision of chapter 47 showing that its purpose is to "facilitate the rapid return of the property to its owner"). Under article 47.01a, the operative issue is who has the superior right to possess the property, not whether the owner has somehow facilitated the theft.[13] *See Universal Underwriters*, 283 S.W.3d at 900. Thus, it is clear that the purpose of transportation code section 501.158's[14] allowing vehicles without VINs to

---

[13] The State claims that when property is seized for lack of a VIN, "DPS officials cannot allow a citizen to possess the property with its [VIN] removed, as the actual owner of the property cannot be *conclusively determined*." [Emphasis added.] But article 47.01a does not require that ownership be conclusively proved to return property, only that the interested party show a "superior right to possession." Tex. Code Crim. Proc. Ann. art. 47.01a (a)(1).

[14] *See* Tex. Transp. Code § 501.158 (using the permissive term, "may," to provide that property seized for lack of a VIN is subject to disposition under article 47.01a). No other provision in the statutory scheme regarding vehicles with missing, altered, or obliterated VINs indicates that such vehicles are considered "per se" stolen. For example, it is an affirmative defense to prosecution for possessing or operating such a vehicle that the person operating or possessing the vehicle is the owner. Tex. Penal Code Ann. § 31.11(b)(1) (Vernon 2003). And a person "determined by the department or a court to be the owner of a motor vehicle . . . that has had the serial number removed, altered, or obliterated *may apply to [DPS] for an assigned vehicle identification number*." Tex. Transp. Code Ann. § 501.033(a) (Vernon 2007) (emphasis added). A certificate of title or "*other valid evidence of ownership* as required by the department" is required to apply for such a number. *Id*. § 501.033(b) (emphasis added). This is in direct contrast to the State's argument that if a vehicle seized for lack of a VIN were returned to the public domain, the seizure and impounding of the vehicle under section 501.158 would be repeated.

be disposed of in the same manner as stolen property via article 47.01a is not, as appellees contend, to "remove such property from the public domain to prevent stolen property from being used and circulated" but, instead, to ensure that such vehicles are returned to their rightful owners if those owners can be ascertained. *See* Tex. Code Crim. Proc. Ann. art. 47.01a(a)(1)–(3) (providing that upon application of interested party, court shall order property delivered to "whoever has the superior right to possession," either without conditions or subject to the condition that the property be made available to the State if needed in future prosecutions, or to a peace officer pending resolution of criminal investigations), art. 47.01a(b) (providing that if probable cause exists to believe that property is stolen, *and* "the identity of the actual owner of the property cannot be determined," the court shall order it delivered to a governmental agency for official purposes, delivered to a person authorized to receive and dispose of property under article 18.17, or destroyed), art. 47.03 (requiring officer seizing property to "immediately file a schedule of same, and its value, with the court having jurisdiction of the case" and "notify the court of the names and addresses of each party known to the officer who has a claim to possession of the seized property"), art. 47.04 (providing that if ownership is proven to the court upon an examining trial, property shall be restored to the owner, subject to the property being made available during trial), art. 47.06–07

29

(providing that property can be sold if not claimed within thirty days of conviction but also allowing owner to recover property after sale as set forth in article 18.17 of the code of criminal procedure).

Here, York has put forth considerable, credible evidence of his ownership of the vehicle, regardless of the missing VIN.[15] Appellees have not controverted that evidence. Although from York's affidavit testimony it appears that the evidence he presented to the justice court showed that McNutt Co., rather than York, was the true owner of the property,[16] Sergeant Martinez's testimony does

---

[15] ... In its motion for rehearing, Wise County contends, and the dissent agrees, that York cannot now claim he owns the trailer for purposes of a takings claim because the justice court's determination that he did not own the trailer is final and entitled to preclusive effect. But the justice court did not find that York is not the owner of the trailer; "ownership" was not at issue in the proceeding. As we have previously stated, article 47.01a does not require a party to prove ownership, but rather a superior right of possession. If McNutt were the rightful owner of the trailer and now bringing a claim as a result of the awarding of the trailer to the State in the justice court proceeding, would we hold that the issue of "ownership" had already been litigated and, therefore, that McNutt could not now attempt to show ownership? Surely a statute compelling such a result would effect a compensatory "taking."

[16] ... York averred that he produced registration receipts, photographs of the trailer with his other equipment, billing records, repair records, DPS inspection records, and his own testimony. However, the registration receipts in this record show the owner as McNutt Co. and York only as the "registration recipient." There is no indication that York presented the justice court with the ownership evidence that he brought forward here. Interestingly, though, he alleges in his Second Amended Petition that in the case of the Wise County Commissioner who recovered his property, the justice court initially ruled that the property be awarded to the county, but in a subsequent proceeding *over a*

30

not indicate that he ever contacted or attempted to contact McNutt Co.; he simply concluded that since York could not produce the original VIN plates that the property was "deemed" stolen and that there was no way of ever tracing ownership.[17] McNutt Co. was never served in the 47.01a proceeding or named as an interested party. This is significant because if McNutt Co. were the owner, as evidenced on the DPS registration receipts, and was allowing York to use the property, also as evidenced by the DPS registration receipts, then York would have a superior right to possess the trailer as against appellees, regardless of whether the trailer was deemed stolen or not. *See Universal Underwriters*, 283 S.W.3d at 901 (holding that a title holder has "'the superior right to possession' over one who holds no title"). It seems logical that if DPS were acting in furtherance of the true purpose of article 47.01a, to return property to its rightful owner, that Sergeant Martinez would at least have

---

*year later, and after the time for appeal had expired*, the justice court ruled that the Commissioner could recover the property. Although mere allegations at this point, it is interesting to note whether the governmental entities in that case accused the plaintiff of overwhelming the court with voluminous filings while at the same time raising numerous avoidance defenses.

[17] *See Am. Fire & Indem. Co. v. Jones*, 828 S.W.2d 767, 768 (Tex. App.—Texarkana 1992, writ denied) (referencing officer's testimony regarding confidential VIN plate that, when cross-referenced through the automobile manufacturer, identified the truck as one reported stolen by the owner). There was no testimony or other evidence as to whether the trailer here would have contained a confidential VIN plate in addition to the plates that were removed.

included McNutt Co. in his investigation.  The evidence that he contacted York instead, coupled with York's allegations (and appellees' admissions that appellees are treating article 47.01a as a forfeiture statute), is enough to at least raise a fact issue sufficient to survive appellees' jurisdictional challenge to York's alleged takings claim.  *See Miranda*, 133 S.W.3d at 227–28; *Andrews*, 155 S.W.3d at 355.

Likewise, we conclude and hold that York raised a fact issue as to whether the trailer was to be used for a public purpose because, although it is currently being stored in a locked area, the justice court's order states that the sheriff's department had the discretion to either use the trailer or dispose of it in its discretion.[18]

### Immunity of Governmental Officials

Wise County also alleged that it is entitled to derivative immunity through the qualified or official immunity of Trooper Godwin and Sergeant Martinez, and the qualified, official, or judicial immunity of Justice of the Peace Johnson.

---

[18] ... York states in his brief, without record references, that "Chief Deputy Doug Whitehead, of the Wise County Sheriff's Department testified in deposition that his intent was to convert the trailer to public use by designating the trailer for use in homeland security and utilizing it to distribute water to county residents in the event of a terrorist attack."  Appellees did not challenge this factual assertion.

Official immunity is an affirmative defense to personal monetary liability available to an official sued in his or her *individual* capacity. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex. 2007); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). It is not a proper basis for a plea to the jurisdiction by a governmental entity. *See Koseoglu*, 233 S.W.3d at 843; *City of Lancaster*, 883 S.W.2d at 653. Qualified immunity, likewise, is an analogous affirmative defense to federal section 1983 claims against public officials, a claim York has not made here. 42 U.S.C.A. § 1983 (West 2004); *Leo v. Trevino*, 285 S.W.3d 470, 479 (Tex. App.—Corpus Christi 2006, no pet.); *see Leachman v. Dretke*, 261 S.W.3d 297, 312 (Tex. App.—Fort Worth 2008, no pet.). Accordingly, we conclude and hold that the dismissal orders cannot be upheld as to York's takings claim based on Wise County's allegations that it is entitled to the benefit of any official or qualified immunity of Trooper Godwin and Sergeant Martinez.

Additionally, derived judicial immunity protects officers of the court or one to whom a judge has delegated or appointed a person to perform services on behalf of the court. *Dallas County v. Halsey*, 87 S.W.3d 552, 553 (Tex. 2002); *Alpert v. Gerstner*, 232 S.W.3d 117, 125–26 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). This type of immunity flows from the official judicial capacity of the judge. *See Dallas County*, 87 S.W.3d at 554. Thus, it logically

33

does not extend to a party to a proceeding, nor to the State or a county simply by virtue of a judge's employment. Accordingly, we conclude and hold that dismissal of York's takings claim would not have been proper on a derivative immunity theory.

Having determined that none of appellees' immunity allegations defeats the county court at law's jurisdiction over York's takings claim as pled, we sustain York's sixth and seventh issues as to that claim only.

Conclusion

Having overruled York's issues dispositive to his declaratory judgment claims, we affirm the trial court's dismissal orders as to those claims. But having sustained York's sixth and seventh issues as to his takings claim, we reverse the trial court's dismissal orders as to that claim only and remand this case for further proceedings consistent with this opinion.

TERRIE LIVINGSTON
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

CAYCE, C.J. filed a dissenting opinion.

DELIVERED: September 24, 2009

34



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-118-CV

LARRY YORK D/B/A                                                    APPELLANT
YORK TANK TRUCKS

V.

STATE OF TEXAS AND                                                 APPELLEES
WISE COUNTY, TEXAS

------------

FROM THE COUNTY COURT AT LAW OF WISE COUNTY

------------

## DISSENTING OPINION ON REHEARING

------------

I respectfully dissent.  The majority correctly held that the Justice of the Peace's judgment, which determined the issue of York's alleged ownership, was not void on its face and, therefore, that it was not subject to collateral attack.  The majority, however, disregards the finality of the Justice of the Peace's determination on the issue of ownership and erroneously holds that York's takings claim may proceed.  In so holding, the majority has allowed York

to do what it held he cannot do—collaterally attack the Justice of the Peace's judgment.

An essential element of a takings case is that the plaintiff owned the property.[1] The basis of York's takings claim is that the State of Texas and Wise County wrongfully took his trailer. But, the Justice of the Peace has determined that the trailer was *not* York's property. York did not directly appeal this decision. Thus, the Justice of the Peace's factual determination that York did not own the property became final with respect to any further challenge raised in state court. York's only available option was to challenge the Justice of the Peace's finding in bankruptcy court, which he failed to do. He cannot collaterally challenge the Justice of the Peace's finding in state court.

Because York's takings claim constitutes an impermissible collateral attack on a final judgment, I dissent. I would affirm the judgment of the trial court dismissing York's suit for want of jurisdiction.

JOHN CAYCE
CHIEF JUSTICE

DELIVERED: September 24, 2009

---

[1] *... Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999).

2